242 So.2d 515

Mrs. Vera MOAK et al.

v.

LINK–BELT COMPANY et al. (Four Cases).

Nos. 50380, 50382, 50387 and 50388.

Dec. 14, 1970.

Rehearing Denied Jan. 18, 1971.

Adams & Reese, W. Ford Reese, Joel L. Borrello, Lawrence L. McNamara, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John V. Baus, Chaffe, McCall, Phillips, Burke, Toler & Sarpy, Harry McCall, Jr., George A. Kimball, Jr., New Orleans, for defendants-appellants-applicants.

John J. Cummings, III, Robert R. Gisevius, Jerald N. Andry, Gilbert V. Andry, III, New Orleans, Chester Francipane, Metairie, for plaintiffs-appellees-appellants.

Christovich & Kearney, Alvin R. Christovich, Sr., New Orleans, for intervenor.

SUMMERS, Justice.

A fire and explosion which occurred in the granulator house of the American Sugar Company Refinery in the Arabi-Chalmette area on February 15, 1965 is the basis of these suits. For about 15 months prior to the explosion Link-Belt Company, under contract with American, through its own personnel and through subcontractors, was engaged in modifying facilities in the granulator house for the movement and storage of partially refined sugar. On the date in question numerous employees, agents and other personnel of American and Link-Belt were at work at and around the scene of the explosion.

As a result of the fire and explosion, eighteen suits were brought. A number were filed against Link-Belt by injured American employees or their representatives and against American by injured Link-Belt employees or their representatives; against both Link-Belt and American by an injured delivery man who happened to be on the premises and by two adjoining property owners for damage to their property.

Suit was also instituted by American and its subrogated insurer seeking judgment against Link-Belt for property damage and loss of profit arising from interruption of production. Link-Belt reconvened against American to recover the balance allegedly due for work completed and equipment delivered evidenced by invoices submitted for payment under the terms of its contract.

American and Link-Belt intervened in the tort suits brought by their respective employees to recover from each other workmen's compensation benefits paid; they likewise instituted direct actions for compensation paid where no tort suit was brought by the injured employee. Each also claimed indemnity or contribution against the other.

All cases were consolidated for trial and appeal. Applying principles of *res ipsa lo-*

*quitur* the judge *a quo* invoked presumptions that doctrine supports and found both American and Link-Belt negligent. Judgment was rendered in favor of all personal injury plaintiffs employed by Link-Belt and its subcontractors against American and its insurers, and, in like manner, judgment was rendered in favor of all those employed by American against Link-Belt and its insurers.

There was judgment in favor of each respective employer for recovery of compensation and medical benefits paid by each to its employees. All claims by American against Link-Belt, and by Link-Belt against American, for contribution to the third-party tort judgment for which each was cast, were denied. Recovery was allowed to the delivery man and the adjoining property owners against American, Link-Belt and their insurers.

Recovery was denied American and its insurers for American's property damage. And there was judgment in favor of Link-Belt in the amount of $300,742.41 based upon a stipulation between the parties for work completed and equipment delivered, including equipment delivered but not installed.

Most parties appealed, or answered an appeal, from the judgment affecting him.

The Fourth Circuit affirmed the trial court judgments awarding recovery on the tort claims for personal injuries and property damage, as well as the awards to the employer-intervenors for compensation and medical benefits paid to their employees. However, while the judgment was otherwise essentially affirmed, the decree provides as follows:

The judgments appealed from are affirmed in all respects except as follows:

(1) To the extent that reimbursement to the payer of workmen's compensation payments is provided by any judgment in respect to judgments in favor of Link-Belt's or its subcontractors' employees or their survivors against American or its insurers, that part of such judgment completely denying contribution in favor of American or its insurers is reversed and judgment is rendered granting contribution in the amount of such reimbursement (but not to exceed one half of the total award to the plaintiff), against Link-Belt; reserving to Link-Belt its right to recover this contribution from its own compensation insurers or its subcontractors and their compensation insurers who receive reimbursement;

(2) To the extent that reimbursement to the payer of workmen's compensation payments is provided by any judgment in respect to judgments in favor of American's employees or their survivors against Link-Belt or its insurers, that part of such judgment completely denying contribution in favor of Link-Belt or its insurers is reversed and judgment is

· rendered granting contribution in the amount of such reimbursement (but not to exceed one half of the total award to the plaintiff), against American; reserving to American its right to recover this contribution from its own compensation insurers who receive reimbursement;

(3) That part of the judgment in favor of Link-Belt as plaintiff in reconvention against American in the amount of $300,742.41 for invoices for unpaid work and materials delivered is reversed, and Case No. 3239 is remanded for further proceedings on that issue not inconsistent with this opinion. 229 So.2d 395, 418.

Applications for writs were filed in this Court by American and its insurers, by Link-Belt and its insurers and by American Mutual Liability Insurance Company (compensation insurer of one of Link-Belt's subcontractors). These applications were granted, limited "to consideration of the correctness of that portion of the Court of Appeal's judgment set forth in paragraphs (1), (2) and (3) of its decree." In all other respects the applications were denied and all other issues became final. 255 La. 551, 232 So.2d 76.

Our review of the Court of Appeal judgment is therefore limited to two aspects of the consolidated cases:

First: The question is presented whether a right of contribution or indemnity· exists in favor of a tort-feasor ·third party against an employer or his compensation insurer where the employer, or his insurer, has paid workmen's compensation benefits to an employee injured in the course and scope of his employment.

The second question is: Was the Court of Appeal correct in remanding the case for further proof of the value of Link-Belt's claim in reconvention for amounts due American under its contract in view of the stipulations entered into between the parties?

The "First" proposition involving contribution or indemnity was the subject of a stipulation filed on the day these consolidated cases were argued in this Court. All parties interested joined in the stipulation and moved "the Court to dismiss the third-party actions which are pending in favor of and against movers, under which actions the Court of Appeal rendered judgment providing for quasi contribution in Paragraphs 1 and 2 of its decree." Included with this stipulation of dismissal is a further motion urging the Court to "enter an order reversing and setting aside that portion of the judgment of the Court of Appeal set forth in Paragraphs 1 and 2 of its decree and to enter an order holding that the Court of Appeal erred in rendering a judgment providing for quasi contribution against the workmen's compensation employer." ·

Since we have decided to grant the motion to dismiss, there is nothing remaining for the Court to adjudicate on this issue, and we must of necessity declare the second motion asking for a judgment reversing the Court of Appeal to be moot.

On the "Second" issue presented, the record reflects that American and its insurer sought recovery against Link-Belt and its insurers for several million dollars in property damage and for business interruption loss, asserting that Link-Belt's negligence caused the explosion. Link-Belt denied its negligence and by reconventional demand sought judgment from American for material delivered and work already performed under the contract at the time of the explosion and fire.

■ The finding by the trial court that both American and Link-Belt were negligent, based upon the presumptions arising from the application of *res ipsa loquitur*, was affirmed by the Court of Appeal. We also agree with the Court of Appeal's statement that a presumption of negligence which attaches in *res ipsa loquitur*, is not available to American in its negligence claim against Link-Belt for American, too, would be negligent under the fact determination of the trial court that *res ipsa* applied to both American and Link-Belt. And we uphold the finding of the trial court and Court of Appeal that American has otherwise failed to establish Link-Belt's negligence by that preponderance of evidence which the law requires. Since American's claim of negligence against Link-Belt fails, only the amount of Link-Belt's reconventional demand for the balance due by American at the time of the explosion and fire under the contract for the building, installation and modification remains at issue.

Before trial, the district judge announced that he would first try and decide questions of liability, after which unresolved issues of damages would be referred to the Commissioner of the Civil District Court. The Court urged, however, that all parties attempt to stipulate the amount of recoverable damages to obviate the necessity of burdensome and time consuming proof. Accordingly, stipulations were entered into by counsel for the various parties establishing the value of virtually all of the death and personal injury claims and several claims for property damage.

In keeping with the Court's suggestion, counsel for Link-Belt and American, after considerable discussion, entered into a stipulation on March 22, 1967 reading as follows:

It is stipulated and agreed by and between AMERICAN SUGAR COMPANY (hereinafter referred to as "American") and LINK-BELT COMPANY (hereinafter referred to as "Link-Belt") that:

1. American has paid Link-Belt the sum of One Million Seven Hundred Fifty-one Thousand Two Hundred Eighty-three and 84/100 ($1,751,283.-84) Dollars on the principal contract and purchase change orders under which work was being performed by Link-Belt at American's Arabi Refinery on 15 February 1965 (hereafter referred to as "the contract").

2. Link-Belt has submitted to American invoices totalling Three Hundred Thousand Seven Hundred Forty-two and 41/100 ($300,742.41) Dollars claimed to be due under the Contract over and above the sum heretofore paid by American as set forth hereinabove, of which Forty-six Thousand Four Hundred Seventy-two ($46,472) Dollars is for equipment which had been delivered to, but not installed, at American's Arabi Refinery on 15 February, 1965.

3. If the Court determines that American is liable to Link-Belt for payment of the invoices specified in Paragraph 2 hereinabove, judgment shall be entered in favor of Link-Belt for Three Hundred Thousand Seven Hundred Forty-two and 41/100 ($300,742.41) Dollars, unless the Court holds that American is·not obligated to pay for equipment delivered but not installed, in which even judgment shall be entered in favor of Link-Belt for

Two Hundred Fifty-four Thousand Three Hundred and 41/100 ($254,300.-41) Dollars, either judgment to bear interest at the rate of five (5%) per cent per annum from the date of this stipulation which is March 22, 1967.

4. If the Court determines that American is not liable to Link-Belt for payment of the invoices specified in Paragraph 2 hereinabove, then judgment shall be entered on this claim in favor of American.

The foregoing stipulation was properly filed in the record, and the consolidated cases proceeded to trial.

In his reasons for judgment on the issue under consideration the trial judge found,

American Sugar has failed to establish by the weight of a preponderance of the evidence that Link-Belt was responsible for the *probable* cause of the explosion. American Sugar cannot collect for damages from Link-Belt because of insufficiency of the evidence that Link-Belt through its negligence caused the damage.

Although no reasons were assigned relating to Link-Belt's reconventional demand, the trial court's decree provided:

* * * that there be judgment herein in favor of Link-Belt Company as plaintiff in reconvention and against American Sugar Company based upon the stipulations entered into between the

aforementioned parties on March 22, 1967, in the full sum of $300,742.41 together with interest thereon at the rate of 5 percent per annum from March 22, 1967 until paid.

We imply from this action that the trial court reasoned the stipulation fixed the amount Link-Belt was to recover if American failed to establish its defense which was that Link-Belt's negligence was the cause of the catastrophe. Conversely, if the Court had found Link-Belt's negligence to be the sole cause of the explosion and fire, American would have recovered its full claim, far in excess of the amount claimed by Link-Belt in reconvention. Moreover, the stipulation would then deny Link-Belt recovery under its contract for work performed and materials furnished, being work and material Link-Belt destroyed by its own negligence and want of care.

■ Although the trial court found that American and Link-Belt were both responsible for the explosion and fire to third parties under the doctrine of *res ipsa loquitur,* it also found that insofar as American's claim of negligence against Link-Belt was concerned there was insufficient evidence to establish that Link-Belt was negligent by that preponderance which the law requires. Under this finding Link-Belt was entitled to recover from American under the contract.

American contends it was called upon in the district court to stipulate with Link-Belt the quantum of Link-Belt's claim in reconvention for the balance due under the contract. Nothing was said, they assert, about stipulating all facts necessary for rendition of judgment; nor was it contemplated that the stipulation was for the purpose of limiting the legal or factual issues to be submitted to the Court. When its defense of negligence against Link-Belt failed, therefore, American contends it was proper for the Court of Appeal to remand the case for the reception of evidence to ascertain its liability under its present theory of the case.

Although the "theory of the case" principle has been abolished in Louisiana (La. Code Civ.P. art. 2164), we cannot accept this contention. The force of stipulations in our law requires a contrary conclusion. As we understand the stipulation, the condition upon which payment to Link-Belt was predicated was the validity of American's defense that Link-Belt's negligence caused the destruction of the work and equipment for which Link-Belt claimed payment in its reconventional demand. When American's defense failed, therefore, the condition was satisfied and Link-Belt was entitled to payment.

The question, then, is how much was owed at the time of the fire and explosion, and to decide this we again look to the stipulation of March 22, 1967. As we read

it, the stipulation fixes the amount of the liability of American to Link-Belt in two possible amounts should American's defense fail. And, since American's claim did fail, the only unresolved question is whether the amount should be $300,742.41, the total amount due Link-Belt, or $254,-300.41, the latter sum representing the amount due after deducting $46,472 for equipment delivered by Link-Belt to American's refinery but not installed.

American contends that "acceptance" under the contract is manifested by payment, and, since the claim of Link-Belt was not paid, the Civil Code places responsibility upon Link-Belt for destruction of the work.

When the undertaker furnishes the material for work, if the work be destroyed, in whatever manner it may happen, previous to its being delivered to the owner, the loss shall be sustained by the undertaker, unless the proprietor be in default for not receiving it, though duly notified to do so. (La.Civil Code art. 2758.)

Article X of the contract between American and Link-Belt is also relevant to this question. The article provides:

We (Link-Belt) will be responsible for material involved in this contract while it is in our plants. From the time it leaves our plants or those of our suppliers you (American Sugar) shall provide and maintain in responsible insur-

ance companies, at your own expense, insurance against loss or damage by fire or other casualty *. * *. If you fail to provide the insurance coverage here contemplated, you agree to assume all loss resulting from damage or injury to equipment.

Reading the code article and the contract provision together, American argues that, though it may have been responsible under Article X of the contract for materials or "equipment" destroyed, its responsibility was limited to the $46,472 agreed upon as the value of "equipment" delivered but not installed; whereas, Article 2758 imposes liability upon Link-Belt as the "undertaker" for the work which is "destroyed, in whatever manner it may happen, previous to its being delivered to the owner." Thus Link-Belt's claim in reconvention against American, if allowed, should be limited to a recovery for the "equipment" or $46,472, and Link-Belt should bear the loss for the "work" prior to "delivery" under the terms of Article 2758, the value of the "work" being $254,300.41. See also La.Civil Code art. 2761. In view of the conclusion we have reached, we need not determine whether "acceptance" under the contract is the same as "deliver" under Article 2758 of the Civil Code.

We hold that American is responsible to Link-Belt for $254,300.41 because its liability was solely conditioned upon its defense against Link-Belt's reconventional demand,

which was Link-Belt's negligence, and that defense failed.

 American's responsibility for the $46,472 representing equipment delivered but not installed is determined by Article X of the contract in which American covenants to insure materials after leaving Link-Belt's plant and if it failed to provide the insurance it agreed to assume all loss resulting from damage or injury to the equipment. There is no necessity to remand the case to make this determination. The stipulation and contract provision quoted suffice to resolve the rights of the parties.

We are compelled to accept this version of the stipulation between American and Link-Belt because no evidence was introduced to support the contention relied upon at this time by American, and its present position was advanced for the first time in the Court of Appeal. Under this version of the stipulation the benefits otherwise flowing to American from Article 2758 of the Civil Code were superseded by the stipulation which became the law between the parties. The trial court's decree also supports this finding.

For the reason assigned, it is ordered that the third party action pending in favor of and against movers is dismissed, all as prayed for.

It is further ordered that the judgment of the Court of Appeal on the issue last considered is reversed, and there is judgment in favor of Link-Belt in accordance with the reasons assigned.

BARHAM, J., recused.