Robert O. **BRENHAM**

v.

**SOUTHERN PACIFIC COMPANY**

v.

**SUTTON'S JUNK & SALVAGE
YARDS, INC.**

and

Sutton's Steel & Supply, Inc.

and

Lionel H. Sutton and Sutton Industries,
Inc. (Third-Party Defendants).

Civ. A. No. 12783.

United States District Court,
W. D. Louisiana,
Lafayette Division.

June 18, 1971.

Piccione, Piccione & Wooten, Charles N. Wooten, Lafayette, La., for plaintiff.

Davidson, Meaux, Onebane & Donohoe, Richard C. Meaux, Lafayette, La., for defendant.

Landry, Watkins, Cousin & Bonin, William O. Bonin, New Iberia, La., for third-party defendants.

PUTNAM, District Judge.

## MEMORANDUM OPINION

Robert O. Brenham, a brakeman for Southern Pacific Company, injured his back on a piece of junk which was lying on the Railroad's right-of-way. At the time of the accident the train on which Brenham was working was on a spur track located within the boundaries of Sutton's Junk and Salvage Yard.

On April 3, 1967, Brenham filed suit against Southern Pacific Company under the F.E.L.A., 45 U.S.C. § 51 et seq., alleging total and permanent disability. On May 9, 1967, Southern Pacific Company answered and impleaded Sutton's Steel & Supply, Inc. (formerly Sutton's Junk & Salvage Yards, Inc.), as a third party defendant. Southern Pacific seeks indemnity, or, in the alternative, contribution.

The Railroad alleges four grounds for its indemnity claim against Sutton's: (1) certain contracts, including a verbal agreement between Southern Pacific and Sutton's, under which Sutton's was obliged to refrain from placing or piling materials closer than six feet from the nearest rail of the spur track; (2) Sutton's breach of the warranty of workmanlike performance and failure to provide Southern Pacific with a safe place to work; (3) indemnity on a tort or quasi-contractual theory, on the ground that Southern Pacific was only constructively at fault, while Sutton's was actually at fault; (4) Sutton's contractual obligation to maintain public liability and property damage insurance. Alternatively, Southern Pacific contends that if it is not entitled to indemnity, it is at least entitled to contribution.

Sutton's responded to the third party complaint by filing a motion to dismiss and a plea of prescription. These motions were denied on December 26, 1967. A subsequent motion to produce the original of one of the contracts upon which Southern Pacific was relying proved fruitless, whereupon Sutton's reurged its motions of dismissal and prescription. The motion to dismiss was denied, and the plea of prescription was referred to the merits.

On August 2, 1968, Southern Pacific impleaded Lionel H. Sutton and Sutton Properties, Inc., alleging that these parties had interfered with the Railroad's servitude thereby causing it to incur liability toward Brenham.

On March 27, 1969, Brenham and Southern Pacific compromised, with the Railroad reserving its rights against the third party defendants.

The case went to trial on the third party demands. Pursuant to Rule 49(a), 28 U.S.C., Federal Rules of Civil Procedure, the jury returned special verdicts as follows:

### INTERROGATORY NO. 1

Did Robert O. Brenham sustain an injury while working in the course of his employment with Southern Pacific Company, at the premises occupied by Sutton Steel & Supply, Inc., on December 8, 1964?

Answer: Yes

### INTERROGATORY NO. 2

Was Southern Pacific Company guilty of negligence which played any part, even the slightest, in causing or bringing about the injury sustained by Mr. Brenham on December 8, 1964, in any of the following respects:

(a) in failing to provide him with a safe place to work, by requiring him to work on the side track at Sutton's yard when it knew or should have known that scrap material had accumulated within six feet of the track in areas where he would ordinarily have to walk?

Answer: Yes

(b) in failing to provide him a safe place in which to work by not providing additional lighting for him on December 8, 1964, under all of the circumstances of this case?

Answer: No.

### INTERROGATORY NO. 3

Was Southern Pacific Company prevented from fulfilling its duty to furnish Mr. Brenham a reasonably safe place in which to work solely because of the actions or omissions of Sutton Steel & Supply Company, Inc., or any of its officers, employees or representatives?

Answer: No.

### INTERROGATORY NO. 4

Was Lionel H. Sutton, individually, guilty of negligence which was a proximate cause of the accident of December 8, 1964, by causing or allowing scrap materials to accumulate within six feet of the track in areas where he knew or should have known that employees of Southern Pacific would ordinarily have to walk?

Answer: Yes.

[The jury likewise found in Interrogatories No. 5 and 6 that Sutton Steel & Supply, Inc., and Sutton Properties, Inc., were guilty of negligence which was a proximate cause of the accident.]

### INTERROGATORY NO. 7

Was Robert O. Brenham himself guilty of negligence which played any part, even the slightest in causing or bringing about the injury sustained by him on December 8, 1964, in any of the following respects:

(a) in failing to keep a proper lookout for his own safety?

Answer: Yes.

### INTERROGATORY NO. 8

Was the negligence of Mr. Brenham a proximate cause of the injury he sustained on December 8, 1964?[1]

Answer: No

INTERROGATORY NO. 9

What percentage of the cause of the accident did Mr. Brenham's negligence contribute?

Answer: 17%

INTERROGATORY NO. 10

What sum of money paid in cash today would fairly and reasonably compensate Robert O. Brenham for the injuries sustained by him as a direct or proximate result of the accident in question?

Answer: 25,000.00

INTERROGATORY NO. 11

Did Sutton Steel & Supply Company, Inc., subsequent to August 1, 1960, verbally agree with Southern Pacific Company that Sutton would not permit scrap material within six feet of the outside rail of the spur tracks located on its property where the railroad cars were to be spotted for loading or picked up for shipment?

Answer: Yes

■ The jury was asked only whether the Railroad's negligence was sufficient to invoke liability under the F.E. L.A., i. e., whether its negligence played any part, even the slightest, in bringing about the accident. The jury was not asked to decide whether the Railroad's negligence was also sufficient to constitute a proximate cause of the accident. No request for a special verdict having been made before the jury retired, this Court exercises its power under Rule 49(a) to make that factual determination. Our appreciation of the evidence is that the Railroad's negligence in sending its men into Sutton's yard when it knew or should have known that the right-of-way was littered with scrap material constituted a proximate cause of the accident. Thus we expressly find that the Railroad was guilty of actual fault, as that term is understood in Louisiana law.

■ It is now settled beyond any doubt that a Railroad's right to recover indemnity or contribution from a third party for liability incurred under F.E. L.A. depends entirely upon state law. See, e. g., Ratigan v. New York Central Railroad Company, 291 F.2d 548 (2d Cir. 1961), cert. denied, New York Central Railroad Company v. Interstate Commodities, Inc., 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed.2d 89 (1961); Chicago, Rock Island & Pacific Railroad Company v. Chicago & North Western Railway Company, 280 F.2d 110 (8th. Cir. 1960), cert. denied, 364 U.S. 931, 81 S.Ct. 378, 5 L.Ed.2d 364 (1961); Zontelli Brothers v. Northern Pacific Railway Company, 263 F.2d 194 (8th. Cir. 1959); Chicago Great Western Railway Company v. Casura, 234 F.2d 441 (8th. Cir. 1956); Fort Worth & Denver Railway Company v. Threadgill, 228 F.2d 307 (5th. Cir. 1955); Waylander-Peterson Company v. Great Northern Railway Company, 201 F. 2d 408 (8th Cir. 1953); Patterson v. Pennsylvania Railroad Company, 197 F. 2d 252 (2d Cir. 1952); United States v. Chicago, Rock Island & Pacific Railway Company, 171 F.2d 377 (10th. Cir. 1948); Chicago, Rock Island & Pacific Railroad Company v. Powers Foundation Drilling Company, 294 F.Supp. 921 (W. D.Okla.1968); Illinois Central Railroad Company v. Standard Oil Company, 292 F.Supp. 337 (S.D.Miss.1968), affirmed per curiam, 403 F.2d 1022 (5th Cir. 1968); Sleeman v. Chesapeake & Ohio Railroad Company, 290 F.Supp. 830 (W.

---

1. The term "proximate cause" is used here and throughout this opinion. Instructions to the jury in defining this term conformed to the Louisiana definition of "cause in fact" as announced and applied in Dixie Drive It Yourself System v. American Beverage Co., 242 La.

471, 137 So.2d 298 (1962); and Bertrand v. Missouri Pacific Railroad Co., 160 So.2d 19 (La.App.3d Cir. 1964), writ denied, 245 La. 1075, 162 So.2d 571 (1964). We have used the term "proximate cause" as synonymous with "cause in fact" for the sake of uniformity.

D.Mich.1968), affirmed Chesapeake & Ohio Railroad Company v. Barnaby, 414 F.2d 309 (6th Cir. 1969); Spielman v. New York, New Haven & Hartford Railroad Company, 147 F. Supp. 451 (E.D.N.Y.1956); Flusk v. Erie Railroad Company, 110 F.Supp. 118 (D.N.J.1953); Annotation, Right of Railroad, Charged With Liability Under Federal Employers' Liability Act, to Claim Indemnity or Contribution From Other Tortfeasor, 19 A.L.R.3d 928, 931 (1968).

*Prescription*

█ It is well established under Louisiana law that a claim for indemnity, whether based on contract, tort, or quasi-contract theories, is prescribed by ten years. Louisiana Civil Code Article 3544; Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967); Edward Levy Metals, Inc. v. New Orleans Public Belt Railroad, 243 La. 860, 148 So.2d 580 (1963). Furthermore, prescription does not commence to run until a cause of action accrues. South Arkansas Lumber Company v. Tremont Lumber Company, 146 La. 61, 83 So. 378 (1919). In indemnity cases, the cause of action is held to arise only when the indemnitee has paid or has been condemned to pay the debt which the indemnitor should have paid. *Minyard*, supra; Appalachian Corporation v. Brooklyn Cooeprage Company, 151 La. 41, 91 So. 539 (1922).

█ The Louisiana courts have apparently not yet decided whether the right to contribution between joint tortfeasors is governed by the one-year period or the ten-year period. However, that is immaterial in this case, since the third party defendants were impleaded before the Railroad paid the debt, that is, before the Railroad had a cause of action for contribution. Under the *South Arkansas* case, therefore, prescription had not even begun to run.

The motion to dismiss on the ground of prescription is therefore denied.

*The Contractual Indemnity Claim*

The Railroad was unable to produce the contract of November 1, 1906, upon which it principally relied for its contractual indemnity claim. However, a supplemental agreement of August 1, 1960, was introduced in evidence. Other contracts relied on by the Railroad are the oral agreement to keep the tracks clear, as found by the jury in Interrogatory No. 11, and the contract of servitude.

█ Under the Louisiana law, a contract is the law between the parties, unless the cause is *contra bonos mores*. Louisiana Civil Code Articles 11, 1892, 1895, 1901, 1945. The Louisiana courts have not announced any clear public policy concerning indemnity and exculpatory clauses, but it is clear that the mere existence of such clauses does not violate public policy. See, *e. g.*, Freeman v. Department of Highways, 253 La. 105, 217 So.2d 166 (1968) (exculpatory clause held not *per se* violative of public policy). Indemnity contracts are construed strictly, and it is not presumed that one party intended to indemnify the other party for the negligence of the latter unless such intention is clearly and unequivocally expressed. Arnold v. Stupp Corporation, 205 So.2d 797 (La.App.1st. Cir. 1967), writ refused, 251 La. 936, 207 So.2d 540 (1968); Jennings v. Ralston Purina Company, 201 So.2d 168 (La.App.2d Cir. 1967), writ refused, 251 La. 215, 203 So. 2d 554 (1967); Moore v. Liberty Mutual Insurance Company, 149 So.2d 192 (La. App.3d Cir. 1963); Buford v. Sewerage and Water Board, 175 So. 110 (La.App. Orl.1937); Mills v. Fidelity & Casualty Company, 226 F.Supp. 786 (W.D.La. 1964), affirmed per curiam sub nom. Yuba Consolidated Industries, Inc. v. Fidelity & Casualty Company, 338 F.2d 341 (5th. Cir. 1964). But see Hospital Service District No. 1 v. Delta Gas, Inc., 171 So.2d 293 (La.App.4th Cir. 1965), writ refused, 247 La. 673, 173 So.2d 540 (1965).

█ The contract of August 1, 1960, contains no express indemnity clause. Furthermore, under the rule of strict construction applicable to contracts of indemnity in Louisiana, we cannot presume that the third party defendants, in their agreement to keep the tracks clear,

or in their contract of servitude, intended to assume liability for damages proximately caused by the Railroad's negligence. The claim for contractual indemnity is therefore denied.

### Implied Contractual Indemnity

The Railroad has urged that it should be awarded indemnity because the third party defendants breached the warranty of workmanlike performance. This argument is based on the following articles of the Louisiana Civil Code:

> Article 1930. The obligations of contract extending to whatsoever is incident to such contracts, the party who violates them, is liable, as one of the incidents of his obligations, to the payment of the damages, which the other has sustained by his default.

> Article 2769. If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.

The Louisiana courts have recognized an implied warranty of workmanlike performance only in limited situations. This may be due to the fact that Article 2769 appears in a section of the Code dealing with construction of buildings and "other works by the job." Thus, for example, the courts have found warranties of workmanlike performance on the parts of a housemover, a building contractor, and a plumbing subcontractor. Hebert v. Pierrotti, 205 So.2d 888 (La.App.3d Cir. 1968); Wolfe v. LeVasseur-Hinson Construction Company, 147 So.2d 747 (La.App.2d Cir. 1962); Hunter v. Mayfield, 106 So.2d 330 (La.App.2d Cir. 1958). All of these cases involved works by the job. There is one case, Truxillo v. Gentilly Medical Building, Inc., 225 So.2d 488 (La.App.4th. Cir. 1969), which spoke of a janitorial service supplier as being impliedly obliged toward the building owner to perform his contract in such a way as not to expose the building owner to liability, even though the contract for janitorial serv-

ices was presumably a contract for continuing services, rather than for a work by the job. The court cited no authority for its holding on this point, and the holding was not necessary to the decision of the case. Thus we do not regard Truxillo as establishing a right to indemnity on an implied warranty theory beyond the situations specifically covered in the Civil Code.

Even aside from these considerations, we believe that where the party seeking indemnity was guilty of negligence which proximately caused the damages, he cannot recover indemnity under the implied warranty theory. To hold otherwise would be to allow a person to do more through an implied contract than he could do through an express contract, for, as we have seen, indemnification for negligence under an express contract must be based on a clear and unequivocal provision to that effect. See General Electric Company v. Cuban American Nickel Company, 396 F.2d 89 (5 Cir. 1968).

The claim for indemnity based on implied contract is therefore denied.

### Tort or Quasi-Contractual Indemnity

The case which is traditionally regarded as having established Louisiant's tort theory of indemnity is Appalachian Corporation v. Brooklyn Cooperage Company, 151 La. 41, 91 So. 539 (1922). That case held that a party only technically, constructively, or vicariously at fault could recover indemnity from the party whose actual fault was the proximate cause of the damage. Under this theory, it is clear that a party who is guilty of actual fault is precluded from recovering indemnity, and the courts have so held. See Hebert v. Blankenship, 187 So.2d 798 (La.App.3d Cir. 1966), noted, 41 Tul.L.Rev. 957 (1967); United Gas Corporation v. Guillory, 206 F.2d 49 (5th. Cir. 1953); Auld v. Globe Indemnity Company, 220 F.Supp. 96 (W.D.La. 1963).

The Appalachian decision was criticized and its rationale replaced in Minyard v. Curtis Products, Inc., 251 La.

624, 205 So.2d 422 (1967). That case transported into Louisiana law the *actio de in rem verso*, as developed in the French jurisprudence. According to the Minyard court:

> " * * * There are now five prerequisites to the successful suit by actio de in rem verso: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and finally (5) the action will only be allowed when there is no other remedy at law, i. e., the action is subsidiary or corrective in nature."

Minyard has been criticized on the ground that the *actio* was incorrectly applied to the facts of that case. Comment, Actio De In Rem Verso in Louisiana: Minyard v. Curtis Products, Inc., 43 Tul. L.Rev. 263 (1969); Litvinoff, Work of Appellate Courts—1967–1968, Obligations, 29 La.L.Rev. 200 (1969); Note, 14 Loy.L.Rev. 434 (1968). Nevertheless, we believe that *Minyard* was successful in making the *actio de in rem verso* a permanent part of the Louisiana law.

■ Because of our special finding that the Railroad was actually at fault, the claim for indemnity must fail under both the *Appalachian* and the *Minyard* theories. The cases cited earlier dispose of the *Appalachian* claim. With regard to the *Minyard* doctrine, we hold in particular that the fifth requirement, that of subsidiarity, is not met. This is so because both the Railroad and the third party defendants were actually at fault, so that the Railroad's rights, if any, are governed by the law of contribution, an existing remedy at law directed to the matter at issue which would be defeated by application of the *actio de in rem verso*. *Minyard*, supra, 205 So.2d at 433, see also: Comment, supra, 43 Tul.L.Rev. 263 at 303.

■ Furthermore, although the Railroad's compromise with Brenham impoverished the Railroad, the third party defendants experienced no enrichment as a result of the Railroad's payment. This is true because Brenham's claim against the third party defendants had prescribed even before this suit was filed against the Railroad. The third party defendants were relieved of their obligation, not through the Railroad's payment, but through the operation of prescription. And although these defendants were enriched when the obligation prescribed, this enrichment was not connected in any way with the Railroad's impoverishment.

Therefore, the claims for indemnity under the *Appalachian* and *Minyard* theories are denied.

### Obligation to Procure Liability Insurance

One of the clauses in the contract of August 1, 1960, provides as follows:

> It is agreed that [Sutton Junk & Salvage Yards, Inc.,] will secure and keep in force during the term of this agreement, Public Liability Property Damage Insurance with maximum of not less than $100,000 for injury to or death of one person and $300,000 for injury to or death of more than one person in any one accident, and maximum of not less than $50,000 for loss of or damage to property * * *.

The Railroad argues that the obligation to procure liability insurance imposed upon Sutton's created an obligation to indemnify the Railroad. We cannot accept this argument as sound. In Dorman v. T. Smith & Son, Inc., 55 So.2d 587, 592–593 (La.App.Orl.1951), affirmed, 223 La. 29, 64 So.2d 833 (1953), Judge Janvier wrote:

> "Such insurance is obtained merely for the purpose of protecting the insured against loss where there is liability and cannot be accepted as creating liability which would not otherwise exist."

Although a similar clause was construed as creating an obligation to indemnify on the first hearing in *Truxillo*, supra, this issue was expressly pretermitted on rehearing.

■ Our own view is that while such a clause may be regarded as evidence of an intent to indemnify, it is not, standing alone, of sufficient weight to show a clear and unequivocal intent to indemnify one against his own negligence.

The claim for indemnity based on Sutton's obligation to procure liability insurance is therefore denied.

*Contribution*

■ In the alternative, the Railroad argues that it is entitled to contribution. Contribution in Louisiana is based upon solidary liability, which the Civil Code defines as follows:

Article 2091. There is an obligation *in solido* on the part of the debtors, when they are all obligated to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor.

Article 2324 provides that joint tortfeasors are liable *in solido* to the injured person. The right to contribution is governed by Articles 2103 and 2104, which provide that the debt should be divided equally, and that the debtor who pays can recover from each of the codebtors his virile portion of the obligation.

■■ The question which faces us is whether the Railroad, whose liability toward Brenham was imposed by the F.E.L.A., was bound *in solido* with the other defendants, whose liability toward Brenham was imposed by the Louisiana tort law. The F.E.L.A. bases the employer's liability on negligence, but in contrast to state law, this negligence is sufficient to invoke liability if it plays any part, *even the slightest*, in bringing about the damage. See Phillips v. Houston Fire & Casualty Insurance Company, 219 F.Supp. 420 (W.D.La.1963). Also, contributory negligence is not a complete defense under the F.E.L.A., 45 U.S.C. § 53, although it is under Louisiana law. Furthermore, the prescriptive periods are different. See 45 U.S.C. § 56 (three years); Louisiana Civil Code Article 3536 (one year).

The only article of the Civil Code which seems to deal with the possible solidarity of dissimilar obligations is the following:

Article 2092. The obligation may be *in solido*, although one of the debtors be obliged differently from the other to the payment of one and the same thing; for instance, if the one be but conditionally bound, whilst the engagement of the other is pure and simple, or if the one is allowed a term which is not granted to the other.

Thus, liability may be *in solido* although the debtors are "obliged differently," so long as they are bound for "one and the same thing."

As a practical matter, the Louisiana courts have been reluctant to find solidarity where the obligations are dissimilar. Most of these cases have involved claims for contribution from workmen's compensation employers, and it has almost uniformly been held that a workmen's compensation employer cannot be solidarily liable with a third party tortfeasor. These decisions rest either on the exclusive remedy provision of the Workmen's Compensation Act, La.R.S. 23:1021 et seq., or on the dissimilarity of the obligations. The recent case of Moak v. Link-Belt Company, 229 So.2d 395, 414 (La.App.4th. Cir. 1969), reversed in part, 257 La. 281, 242 So.2d 515 (1971), awarded a "quasi-contribution" to a third party tortfeasor up to the amount of the employer's maximum compensation liability, but the Louisiana Supreme Court was deprived of the opportunity to rule on the correctness of this award by a compromise between the parties entered into before the issue came up for hearing. We cannot construe this decision, which is contrary to a long line of constant jurisprudence, as broadening Louisiana's previous policy of refusing to find solidarity in this situation.

The most relevant Louisiana case which we have found is Rogers v. Stuyvesant Insurance Company, 198 So.2d 685 (La.App.1st. Cir. 1967), writ granted, 251 La. 42, 202 So.2d 655 (1967) (apparently settled prior to hearing in the Louisiana Supreme Court). In that case

the court awarded contribution in favor of a third party against a Jones Act employer, on the ground that the basis for liability under the Jones Act was negligence. The court did not seem to be aware of, or at least did not discuss, the differences between negligence under the Jones Act and under Louisiana law. As is well known, the standards of negligence under the Jones Act are the same as under the F.E.L.A. The differences between F.E.L.A. negligence and Louisiana negligence were carefully delineated in *Phillips*, supra, where this Court found that an F.E.L.A. employer and a third party could not be joint tortfeasors under Louisiana law. Of course, *Phillips* is entitled to no weight as a pronouncement of state law, but its appreciation of negligence under the F.E.L.A. is entitled to perhaps more weight than the cursory treatment of Jones Act negligence in *Rogers*.

Faced with such a standoff, we naturally seek another way to resolve the controversy. Assuming, then, but not deciding, that the Railroad and the third party defendants were bound *in solido* toward Brenham, we would nevertheless deny the claim for contribution under the facts of this case.

According to Pothier, the right to contribution is based on the equitable principle which does not allow the codebtors to enjoy, at the expense of the paying debtor, the *liberation from a debt* for which they were as much bound as he was. 1 Pothier, Treatise on the Law of Obligations 147 (Evans transl. 1826); Note, 43 Tul.L.Rev. 153, 157 (1968). The same idea was expressed in Sincer v. Bell, 47 La.Ann. 1548, 18 So. 755 (1895), where the court said:

> There could be, as between Sincer and Bell, no contribution arising out of that payment, for contribution, when admitted, is on the theory that payment by one discharges another also.

And indeed, the idea is expressed in the very definition of solidary obligations. Article 2091, supra. In the instant case, the obligation of the third party defendants toward Brenham had prescribed before Brenham filed his suit against the Railroad. These defendants had a perfect defense against Brenham, namely, prescription.[2] It is clear that the payment by the Railroad under its compromise with Brenham did not secure any release for these parties, who had already been released by the operation of prescription. An award of contribution would thus be unjustified.

Also relevant here is the case of Fort Worth & Denver Railway Company v. Threadgill, 228 F.2d 307 (5 Cir. 1955), in which the court held that a railroad was not entitled to contribution where the third party had a perfect defense—contributory negligence—under Texas law. In the instant case, the jury found that Brenham's contributory negligence was not a proximate cause of the accident, it having contributed only 17% to the cause. We take this as an indication that this jury would not have held Brenham's claim against the third party defendants barred by contributory negligence. Nevertheless, we believe that under the *Threadgill* rationale, these defendants were entitled to assert their defense of *prescription* as a bar to the indemnity claim.

The claim for contribution is therefore denied.

For the foregoing reasons, judgment is rendered in favor of third party defendants, Sutton's Steel & Supply, Inc., Lionel H. Sutton, and Sutton Properties, Inc., and against third party plaintiff, Southern Pacific Company. Counsel for third party defendants will prepare a formal decree for signature in accordance with Rule 9(e) of this court, and submit same for signature forthwith. Judgment will not be entered until such decree is filed with the Clerk.

---

2. This is not to say that Southern Pacific's action against Sutton's for indemnity or contribution has prescribed. Here we speak only of the prescription applicable to Brenham's action against Sutton's.