GATES RUBBER COMPANY,
Third-Party Plaintiff,

v.

Dewey J. COMEAUX and Highlands Insurance Co., Third-Party Defendants.

Civ. A. No. 740337.

United States District Court,
W. D. Louisiana,
Monroe Division.

Sept. 6, 1978.

Thomas M. Hayes, Jr., Hayes, Harkey, Smith & Cascio, Monroe, La., for third party plaintiff.

William G. Kelly, Jr., Davenport, Files, Kelly & Marsh, Monroe, La., for third party defendants.

DAWKINS, Senior District Judge.

## RULING

This case began as a personal injury action brought under this court's diversity jurisdiction. Plaintiff, George Amick, filed a complaint on April 4, 1974 claiming damages for an injury which occurred on April 30, 1973. On May 13, 1974, the workmen's compensation insurer of Amick's employer intervened to recover amounts it had paid in weekly benefits and medical expenses. On March 24, 1977, a jury rendered a verdict in favor of plaintiff in the amount of $100,000, subject to the intervenor's claim.

Meanwhile, on February 24, 1977, defendant Gates Rubber Company filed a third party complaint against Dewey J. Comeaux and Liberty Mutual Insurance Company. (Highlands Insurance Company was substituted for Liberty Mutual by amended complaint). This third party demand was not tried by the jury; it is this claim which confronts us now.

On May 17, 1978, the third party demand was removed from the trial docket and was

submitted for decision by us on the basis of the record as designated by stipulation. The parties have filed their stipulation and have submitted their briefs and depositions. Moreover, the third party defendants have filed a motion to dismiss, contending that the third party plaintiff's claim has prescribed. This motion was referred to the merits on June 20, 1978, and now is before us for decision together with the merits. For the reasons given hereinafter, it is our considered opinion that there should be judgment in favor of third party defendants, dismissing the third party complaint.

The motion to dismiss filed by third party defendant raises the problem of the applicable prescriptive regime for third party actions for contribution. Louisiana law and jurisprudence do not provide clear answers to the questions of when the applicable prescriptive period commences and what is the applicable prescriptive period.[1] Because of the complexity and importance of that issue, and because of our decision on the merits, we will not presume to second guess the Louisiana courts and legislature by attempting to resolve the prescription question. Rather, we choose to base our decision on the fundamental matter of whether Comeaux was guilty of any negligence *vel non*.

## FINDINGS OF FACT

In a joint stipulation submitted to the court, the parties have outlined many of the pertinent facts. Those facts, as stipulated, are as follows:

1. At all times pertinent, GEORGE C. AMICK ("AMICK"), plaintiff in the main demand, was an employee of CESCO, INC. ("CESCO"), holding the position of District Branch Manager in Monroe, Louisiana. CESCO'S headquarters were in Houston, Texas, but its main Louisiana office was in Maplewood, a suburb of Lake Charles. DEWEY COMEAUX ("COMEAUX") was CESCO'S purchasing agent, with an office in Maplewood; and, there was a policy of liability insurance issued by HIGHLANDS to CESCO, affording liability insurance coverage in the premises, not only to CESCO, but also to COMEAUX. HIGHLANDS was also the workmen's compensation insurer for CESCO.

2. GATES was a manufacturer of industrial rubber products, including hoses.

3. In the fall of 1972 and early part of 1973, CESCO, through COMEAUX, purchased thirteen hoses from GATES. Five of these were shipped by GATES to CESCO'S office at Port Neches, Texas; two to Baton Rouge; four to Maplewood; and two to Monroe, Louisiana. Insofar as GATES is concerned, these were specially designed items.

1. See Judge Rubin's discussion of the problem in *Avondale Ship-Yards, Inc. v. Vessel Thomas E. Cuffe*, 434 F.Supp. 920, 932–34 (E.D.La. 1977). *See also* Note, 43 Tul.L.Rev. 153 (1968); Note, 46 Tul.L.Rev. 1044 (1972); Note, 49 Tul. L.Rev. 1139 (1975).

   On the commencement issue, there are at least two possibilities. Third party defendants here contend that prescription should commence with the original judicial demand, relying on the history of Louisiana Civil Code article 2103. See *Kahn v. Urania Lumber Co.*, 103 So.2d 476 (La.App. 2d Cir. 1958); Civil Code article 2103; *Brown v. New Amsterdam Casualty Co.*, 142 So.2d 796 (La.1962); and *Lanier v. T. L. James & Co.*, 148 So.2d 100 (La.App. 1st Cir. 1962). Third party plaintiffs, on the other hand contend that prescription ought to commence when the original defendant pays the judgment or settlement. See *Brenham v. Southern Pacific Co.*, 328 F.Supp. 119 (W.D.La.

1971). In addition, it should be noted that the effect of Civil Code article 2097 (interruption of prescription for joint tortfeasors) has yet to be settled.

As for the applicable prescriptive period, third party defendants say that the period ought to be one year, since the demand arises out of a tort action. Third party plaintiffs contend that the ten year period for suits in quasi-contract (or the ten year period for unenumerated causes of action) ought to apply.

The crux of the problem is, of course, that any conceptually satisfying resolution appears to be inequitable, and any equitable solution appears to be conceptually unsatisfying. The question is (and has been) ripe for legislative action (compare Louisiana Code of Civil Procedure article 1067, which resolved a similar problem in the area of reconventional demands).

4. Almost immediately defects were discovered in the hoses at Port Neches, and these were returned to GATES in early 1973 for replacement. One of the replacement hoses was also defective, and it, also, was replaced. One or more defects were discovered in hoses at Maplewood, and these were returned to GATES.

5. There were various types of communication, including correspondence and telephone calls, between COMEAUX and HUEY FRICK ("FRICK"), the GATES regional sales representative, who had made the sale of the hoses to COMEAUX.

6. COMEAUX did not notify AMICK, manager of the Monroe plant, of the defects noted in the other GATES hoses.

7. On April 30, 1973, AMICK, for the first time, put a GATES hose into use while operating a mechanism for cleaning chemicals at an industrial plant in Shreveport, Louisiana. While being tested, the hose split, allowing hot caustic acid to spray AMICK, causing serious burns over his back and legs.

8. AMICK filed suit against GATES for damages and expenses. HIGHLANDS intervened, seeking recovery of workmen's compensation benefits paid AMICK. GATES then filed a third party demand against COMEAUX and HIGHLANDS, alleging HIGHLANDS to be the liability insurer of CESCO and COMEAUX, contending that COMEAUX was guilty of dereliction of duty, which contributed to the accident; and, thus alleging HIGHLANDS and COMEAUX would owe GATES contribution in the event of a judgment for AMICK. HIGHLANDS and COMEAUX have denied COMEAUX' negligence and liability.

9. A number of discovery depositions were taken.

10. Because of the time element involved, we severed trial of the third party demand, and allowed the principal demand to proceed.

11. Shortly before trial of the main demand, GATES stipulated that the hose in question contained a defect when it left the factory; and, that the defect allowed the hose to burst and its contents to escape.

12. Trial of the main demand proceeded before a jury, which awarded AMICK damages in the amount of $100,000 plus interest of $21,000, which GATES has paid.

13. This third party demand involves GATES' claim to recover one-half of that amount as a result of the alleged dereliction of duty by COMEAUX. Third party defendants contend that, if they are liable to GATES, then interest runs only from date of judicial demand against third party defendants.

In addition to the stipulated facts, we have made the following findings based upon the evidence in the record.

Dewey Comeaux·was the head of Cesco's purchasing department when the hoses were bought from Gates. Comeaux had a high school education but no subsequent technical training. Moreover, he was not in charge of designing equipment purchased by the company, nor was he responsible for safety.

Comeaux' contact at Gates was Hugh Frick, a "field engineer" in charge of sales and application of Gates products. Frick was not extensively trained in design and production of hoses, but he did have some background in engineering physics. Frick stated that the Monroe hoses were shipped six to eight weeks before the other hoses. He also said that the possibility of recall was discussed at the management level of Gates and that a decision was reached not to recall all the hoses. The feeling was that the rest of the hoses (those outside of Maplewood and Port Neches) were not defective. Dewey Comeaux was never advised of the recall discussion; moreover, he did not think that the hoses were made from the same batch, due to the variation in

shipping dates. Also, letters containing the following statements were sent to Comeaux by Frick prior to the Shreveport accident:

We have corrected all of this and it will not happen again.

We are sorry for all the problems we caused and promise it will not reoccur.

Fred Konrad, Quality Auditor for Gates at the time, said that a recall wasn't issued because it wasn't felt that the problem would recur. Although he did say that if he had known that more hoses were out he would have checked them, the fact remains that no one at Gates ever followed up on this matter. Erle Tandy, supervisor of Gates' service department, felt that he, too, might have issued a recall if he had known all the facts; but no recall was ever issued because no one ever took the time to learn the facts.

After reviewing the record, we find that Comeaux was justified in believing that the remaining hoses were safe. We also find that Comeaux did not know that the Monroe hoses were defective. Finally, the facts do not indicate that Comeaux should have been aware of the defects in the Monroe hoses.

## CONCLUSIONS OF LAW

■ This case essentially is a variation of an "executive officer" suit. Here, Gates would be entitled to contribution if it could meet the criteria for executive officer liability set out in *Canter v. Koehring*, 283 So.2d 716 (La.1973). These criteria, oft quoted are:

1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee) breach of which has caused the damage for which recovery is sought.

2. This duty is delegated by the principal or employer to the defendant.

3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances—whether such failure be due to malfeasance, misfeasance, or nonfeasance, including situations where the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from breach of the duty.

4. With regard to the personal (as contrasted with the technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of his employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If defendant's general responsibility has been delegated, with due care, to some responsible subordinate or subordinates, he is not himself personally at fault and liable for negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.

■ Here, Gates is claiming that even though it did not discover and warn against the possibility of more defective hoses that somehow Comeaux should have known and warned Amick about the same. Differently put, Gates would have Comeaux undertake an investigation and recall of the remaining hoses when by its own mistake and inadvertence Gates decided not to investigate or recall the remaining products.

In our opinion, Gates has not shown that Comeaux had or ought to have had knowledge that the Monroe hoses were defective. Because of the variation in shipping dates, Comeaux thought the Monroe hoses were made from a different batch. Additionally, Comeaux was entitled to rely upon the assurances of the manufacturer's representative, Frick, that there would be no more problems with the hoses. In absence of any knowledge, actual or constructive, of de-

fects in the Monroe hoses, Comeaux had no duty to investigate or to warn. Accordingly, we conclude that Comeaux cannot be held liable as a joint tortfeasor with Gates.

With great imagination, counsel for Gates has tried to predicate liability under Louisiana Civil Code article 2317 by arguing a theory of "constructive custody." Even if such a theory were to be accepted, Gates' own fault, which we consider the sole cause of the plaintiff's injuries, would preclude recovery under this theory. See *Loescher v. Parr*, 324 So.2d 441 (La.1975) for the jurisprudential recognition of strict liability under 2317 and the defenses thereto.

For all these reasons, therefore, we find as a matter of fact and law that Comeaux is not liable to Gates under the latter's third party demand. Judgment will be issued accordingly.