BASKIN, Judge.
This is an appeal from a final agency order directing Dr. Fraga to reimburse the Department of Health and Rehabilitative Services [HRS] the sum of $38,252.75 received by him as payment for psychiatric services he rendered between January 1, 1980, and February, 1982. We affirm.
Dr. Fraga, a practicing psychiatrist who left Cuba in 1967, obtained a license to practice medicine and surgery in Florida in 1973. He did not obtain certification from the American Board of Psychiatry because his age precluded him from entering a required residency program. Proceeding without Board certification, but with the full approval of HRS, Dr. Fraga provided psychiatric services to Medicaid recipients from 1974 through 1979. In February, 1980, HRS sent Dr. Fraga a letter informing him that only Board certified or Board eligible psychiatrists were permitted to bill Medicaid for psychiatric services under the eligibility requirement of Florida Administrative Code Rule IOC-7.38, which went into effect on January 1, 1980.* The rule *145 provided: “Payment for psychiatric services shall be made only to Board candidates or Board certified psychiatrists.”
A few days after receiving this information, Dr. Fraga advised HRS that although he was neither Board certified nor Board eligible, he had extensive experience and qualifications as a psychiatrist. Despite the fact that Dr. Fraga was now aware that he lacked the Board certification required by the new rule and that he had not received HRS authorization to participate in the Medicaid program, Dr. Fraga nevertheless continued to treat patients and to bill HRS for psychiatric services rendered under Medicaid. HRS, as a matter of course, continued to pay Dr. Fraga’s claims. During the summer of 1981, the Medicaid Office of Provider Relations discovered that ineligible psychiatrists were billing the Medicaid program for psychiatric services rendered to Medicaid recipients. To determine which doctors were qualified to bill the program, HRS sent all providers of psychiatric services form letters requesting documentation of Board eligibility or Board certification and advising them that only Board certified or Board eligible psychiatrists were entitled to bill the program. Dr. Fraga received this form letter in August, 1981. He immediately answered by again informing HRS that he was not Board certified or Board eligible and repeated his extensive background and qualifications. HRS did not immediately reply to Dr. Fraga’s August letter. During the ensuing nine months, Dr. Fraga continued to treat patients and to bill the Medicaid program for psychiatric services, and HRS continued to pay his claims. Dr. Fraga never advised HRS that he was entitled to bill the Medicaid program for providing psychiatric services to Medicaid recipients, and Dr. Fraga is not presently and has never been a Board certified or Board eligible psychiatrist.
On March 9, 1982, HRS sent Dr. Fraga a letter advising him that he was ineligible to be compensated for furnishing psychiatric services to the Florida Medicaid program and demanding that he reimburse the Medicaid program the sum of $38,252.75 as overpayments by Medicaid based upon improper billings for psychiatric services rendered by Dr. Fraga from January, 1980, through March, 1982. After an administrative hearing, the hearing officer issued a Recommended Order rejecting Dr. Fraga’s contentions that HRS was equitably es-topped from seeking reimbursement. The hearing officer concluded:
2. Petitioner is statutorily responsible for the administration of the Florida Medicaid Program, specifically, protecting the integrity of the Program. Sections 409.266(1) and (6) — (9), Florida Statutes.
3. Effective January 1, 1980, Section 10C-7.38(4)(a)8, Florida Administrative Code, has provided that “Payment for psychiatric services shall be made only to Board candidates or Board certified psychiatrists.”
4. Respondent urges that the doctrine of equitable estoppel should be invoked against Petitioner to bar it from asserting its claim. This doctrine rests upon three basic premises: (a) that one party by words or conduct has caused another to believe that a material fact or a material state of the law exists, (b) the party misled must have relied on this representation, and (c) the position of that party must have been changed as a result of reliance upon the state of affairs. Davis and Sons v. Askew, 343 So.2d 1329 (Fla. 1st DCA 1979 [1977]); Greenhut Construction Co. v. Knott, [247] 242 So.2d 517 (Fla. 1st DCA 1971). Equitable es-toppel may be invoked against the State only under exceptional circumstances. North American Company v. Green, 120 So.2d 603 (Fla.1960).
5. The facts of the instant case do not justify application of the doctrine of equitable estoppel against Petitioner. The record reflects that Respondent was advised of the limitations on billing for psychiatric services under the Medicaid Program on February 4, 1980, one month after the effective date of Section 10C-7.-38(4)(a)8, Florida Administrative Code. Although, by his own admission, Respon *146 dent was aware that he was not qualified to bill for psychiatric services pursuant to that administrative rule, he continued to bill and receive payment for those services. The record does not reflect that Petitioner advised Respondent that, notwithstanding the limitations imposed by the new rule, he was entitled to bill the Medicaid Program for psychiatric services.
Petitioner’s continued payment to Respondent for services does not constitute “misleading” behavior sufficient to invoke the doctrine of equitable estoppel against Petitioner. See Southwest Community Mental Health Center v. Department of Health and Rehabilitative Services, Case No. 82-106PH, Final Order December 6, 1982. Respondent was specifically advised of the limitations placed upon billing for Medicaid psychiatric services. Nevertheless, he continued to bill and receive payment for such services. The fact that Petitioner, due to the size and complexity of the Medicaid Program, failed to pre-audit Respondent’s claims, thereby improperly paying him for services for a period of time, does not give rise to an estoppel. Effective January 1, 1980, the law prohibited Respondent from billing Medicaid for psychiatric services, and Petitioner advised him in written form twice that he was not entitled to receive payment.
HRS entered a Final Order adopting the Recommended Order, requiring Dr. Fraga to reimburse Medicaid.
We find that the hearing officer has correctly interpreted the applicable law in determining that the doctrine of equitable estoppel does not apply to the facts of this case. Appellant’s reliance on the case of Florida Livestock Board v. Gladden, 76 So.2d 291 (Fla.1954) is misplaced. In that case, the Florida Livestock Board notified hog farmers, through its own regulations, that they could feed uncooked garbage to hogs until August 15, 1953, and after that date, it would be unlawful to feed the hogs uncooked garbage. However, the actual effective date of the legislative act prohibiting the feeding of uncooked garbage was August 4, 1953. The Board, taking the position that it could not extend the effective date of the Act, refused compensation to a hog farmer whose hogs were seized because they had been fed uncooked garbage after August 4, 1953, but before August 15, the effective date of the rules. The supreme court held that the hog farmer was entitled to compensation for the seized animals based upon the fact that the Board, acting within the scope of its implied authority to pass regulations implementing the Act, specifically advised farmers that the prohibition against feeding uncooked garbage to hogs would not be effective until August 15, 1953. Under those exceptional circumstances, the doctrine of equitable estoppel applied against the state, because, as the court stated, to rule otherwise “would be tantamount to the perpetration of a fraud by an administrative agency of the state against one of its citizens.” Id. at 293. In the case before us, HRS continued to pay Dr. Fraga during the two-year period in which he improperly billed Medicaid. Because appellant knew that he did not qualify for payment when he rendered psychiatric services, it cannot be said that HRS “perpetrated a fraud” against him within the meaning of Florida Livestock Board, even though it continued to pay him.
The doctrine of equitable estoppel is not applicable in transactions which are forbidden by statute or which are contrary to public policy. See Dade County v. Bengis Associates, Inc., 257 So.2d 291 (Fla. 3d DCA), cert. denied, 261 So.2d 839 (Fla.1972); City of Miami Beach v. Meiselman, 216 So.2d 774 (Fla. 3d DCA 1968), cert. denied, 225 So.2d 533 (Fla.1969); State ex rel. Schwartz v. City of Hialeah, 156 So.2d 675 (Fla. 3d DCA 1963). Courts have consistently refused to apply estoppel against the state on the basis of unauthorized or mistaken acts or representations of state officers. See, e.g., Austin v. Austin, 350 So.2d 102 (Fla. 1st DCA 1977), cert. denied, 357 So.2d 184 (Fla.1978) (misstatement of law in pamphlet issued by division of retire *147 ment did not operate as an estoppel against division); Bengis Associates (city not es-topped from requiring removal of sign used for almost two years where permit for sign was mistakenly issued in violation of zoning ordinance); Meiselman (city not es-topped from revoking permit for erection of sign where permit was erroneously issued in violation of city ordinance). The hearing officer in the case before us correctly observed that estoppel will lie against the state only in rare and exceptional circumstances. See, e.g., George W. Davis & Sons, Inc. v. Askew, 343 So.2d 1329 (Fla. 1st DCA 1977); Florida Livestock Board. The special circumstances required to invoke estoppel must include a positive act on the part of a state official upon which the party claiming estoppel has a right to rely. See State v. Hadden, 370 So.2d 849 (Fla. 3d DCA 1979); Jefferson National Bank v. Metropolitan Dade County, 271 So.2d 207 (Fla. 3d DCA 1972), cert. denied, 277 So.2d 536 (Fla.1973). Moreover, “one’s own wrongful act ordinarily cannot serve as a basis of a claim of estoppel against another_” Id. at 214.
The exceptional circumstances necessary to apply the doctrine of equitable es-toppel are not present in this case. The improper payments made by HRS do not constitute the positive act by a state official required to invoke the doctrine of es-toppel against the state. Hadden; Jefferson National Bank. Dr. Fraga’s actions in continuing to bill Medicaid for psychiatric services rendered despite his knowledge that he was ineligible to receive payment precludes his claim of estoppel. See Department of Revenue v. Anderson, 403 So.2d 397 (Fla.1981); Jefferson National Bank; Bengis Associates.
Appellant’s remaining points lack merit.
Finding no error, we affirm the final order.

The rule was amended in 1982 to provide:
8. Payment for psychiatric services shall be made only for those services personally rendered by psychiatrists, as defined in 10C-7.38(1)(h).
Section (1)(h) defines psychiatrist:
“Psychiatrist" means a state licensed physician who is certified or meets the requirements for certification by the American Board of Psychiatry and Neurology or the American Osteopathic Board of Neurology and Psychiatry.