**John R. YOUELL, on behalf of himself and those Underwriters at Lloyd's, London, subscribing Railroad Protective Policy No. 3649–1982, Plaintiff,**

v.

**James Roland MADDOX, individually and d/b/a J & M Construction and Demolition, an unincorporated firm, Defendants.**

Civ. A. No. 86–300–JLL.

United States District Court,
D. Delaware.

July 11, 1988.

W. Harding Drane, Jr. of Potter, Anderson & Corroon, Wilmington, Del., and Michael J. Athans of Lord, Bissell & Brook, Atlanta, Ga., of counsel, for plaintiff.

David E. Brand of Prickett, Jones, Elliott, Kristol & Schnee, and Alan T. Boyd of Bayard, Handelman & Murdoch, P.A., Wilmington, Del., for defendants.

MEMORANDUM OPINION

LATCHUM, Senior District Judge.

## I. INTRODUCTION

The present matter stems from a suit brought by John R. Youell ("plaintiff"), on behalf of himself and those Underwriters at Lloyd's, London, subscribing Railroad Protective Liability Policy No. 3649–1982, against James Maddox ("Maddox"), a citizen of Delaware, and J & M Construction and Demolition ("J & M Construction").[1] The suit arises from a settlement which plaintiff's insured, and the original nominal plaintiff, Consolidated Rail Corporation ("Conrail") entered into with its employee, James F. Tuerk ("Tuerk"), who was injured in an area where J & M Construction was

---

1. Maddox was doing business as J & M Construction and Demolition, which is an unincorporated firm with its principal office in Delaware. The Court's collective reference to "defendants" is intended to include both Maddox and J & M Construction, and this opinion will use Maddox and J & M Construction interchangeably.

removing track and rail pursuant to a contract with Conrail.

Presently before the Court is defendants' motion for summary judgment (Docket Item ["D.I."] 54) as to Counts I and II of plaintiff's amended complaint (D.I. 51 ¶¶ 11–18), as well as plaintiff's Renewed Motion for Summary Adjudication as to Count III of said complaint (D.I. 57).[2] Count I alleges that plaintiff is entitled to indemnification at common law for the $500,000 which plaintiff paid to Tuerk in settlement of his claim against Conrail. (D.I. 51 ¶ 14.) In the alternative, Count I seeks contribution from defendants for a portion of that amount. (*Id.*) Count II asserts that J & M Construction breached its contract with Conrail by failing to perform its work in a safe, orderly, efficient and workmanlike manner. (*Id.* ¶ 17.) Plaintiff alleges that this breach caused Tuerk to suffer injuries and plaintiff to incur damages in the amount of $500,000. (*Id.* ¶ 18.) Count III alleges that J & M Construction agreed in its contract with Conrail to indemnify Conrail for all losses occurring in connection with the performance of the contract and that J & M Construction did not defend and has not indemnified Conrail for the Tuerk suit and settlement. (*Id.* ¶¶ 19–23.)

In support of their motion for summary judgment, defendants argue that, as a matter of law, plaintiff may not assert the claims set out in Count I. Defendants also maintain that plaintiff's claim in Count II for breach of contract is barred by the applicable statute of limitations. For the reasons set forth below, the Court will grant defendants' motion for summary judgment as to the claims for common law indemnity and breach of contract. However, defendants' motion as to the claim for contribution in Count I will be denied.

Finally, the Court will deny plaintiff's Renewed Motion for Summary Adjudication as to Count III.

## II. BACKGROUND

The parties do not dispute the material facts of this case. On June 22, 1982, Conrail and J & M Construction entered into a contract for the removal of railroad rails and ties from Conrail's Benning Yard facility, located in Washington, D.C. (*See* D.I. 55 Exhibit C.) Paragraph Two of the contract provided that "[a]ll work to be done by [J & M Construction] ... shall be done in a safe, orderly, efficient and workmanlike manner...." (*Id.* ¶ 2.) The contract also provided that "Conrail's property shall be left in a clean and safe condition and the condition of said premises shall be subject to the approval of Conrail at all times during the course of the [work]." (*Id.* ¶ 7.)

The contract further required that Maddox, at his own expense, purchase the following forms of insurance:

(a) Workmen's Compensation, Employer's Liability Insurance, and Occupational Disease Insurance;

(b) *Contractor's Public Liability Insurance*

Contractor shall furnish evidence that, with respect to the operations it performs, it carries regular Contractor's Public Liability Insurance providing for a limit of not less than $500,000 single limit, bodily injury and/or property damage combined, for damages arising out of bodily injuries to or death of all persons in any one occurrence and for damage to or destruction of property, including the loss of use thereof, in any one occurrence.

(c) *Contractor's Protective Public Liability Insurance*

Contractor shall furnish evidence that, with respect to the operations performed by subcontractors, it carries in its own behalf regular Contractor's Protective Public Liability Insurance providing for a limit of not less than $500,000, single limit, bodily injury to or death of all persons in any one occurrence and for damage to or destruction of property,

---

**2.** This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1332, as the citizenship of the parties is diverse and the amount in controversy exceeds $10,000, exclusive of interest and costs.

including the loss of use thereof, in any one occurrence.

(d) *Railroad Protective Public Liability Insurance*

In addition to the above, Contractor shall furnish evidence that, with respect to the operations it or any of its subcontractors perform, it has provided Railroad Protective Public Liability Insurance (AAR–AASHTO form) in the name of Consolidated Rail Corporation providing for a limit of not less than $500,000, single limit, bodily injury and/or property damage combined, for damages arising out of bodily injuries to or death of all persons in any one occurrence and for damage to or destruction of property, including the loss of use thereof, in any one occurrence. Such insurance shall be furnished with an *aggregate* of not less than $1,000,000 for all damages as a result of more than one occurrence.

(*Id.* ¶ 18) (emphasis in original).

Paragraph Eighteen also stated that "[t]he furnishing of the aforesaid insurance shall not be deemed a limitation on the liability of [J & M Construction] ... but shall be deemed additional security for Conrail." (*Id.* at 9.)

Maddox purchased the Railroad Protective Liability Insurance through a Certificate of Insurance with Lloyd's, London, and obtained the Contractor's Public Liability Insurance from Selected Risks Insurance Company. (Defendants' Answer to Plaintiff's Second Set of Interrogatories, D.I. 19 ¶ 1.)

Tuerk, a Conrail engineer, was injured in the pre-dawn hours on July 3, 1982 when, during the course of his employment, he fell over track material in the Benning Yard in an area in which J & M Construction was working. (D.I 51 ¶ 7; D.I. 52 ¶ 7.) Tuerk sued Conrail pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, to recover damages for his injuries. (D.I. 51 ¶ 9; D.I. 52 ¶ 9.) Conrail made a demand upon Maddox to assume the defense of the Tuerk suit and to indemnify it on the claim by Tuerk. Maddox took no action on this demand.[3]

On November 30, 1983, plaintiff settled Tuerk's claim by paying $500,000 to Tuerk on behalf of its insured, Conrail. (D.I. 51 ¶ 10; D.I 52 ¶ 10.) Lloyd's paid the settlement in fulfillment of its obligations under the Railroad Protective Liability Insurance policy.

On July 2, 1986, Conrail filed suit in this Court to recover the $500,000 paid out to Tuerk. (D.I. 1.) Within the past year, the parties have briefed and argued various motions for summary judgment. This Court has most recently denied defendants' motion for summary judgment as to Counts I and II of Conrail's original complaint. (*See* Order Denying Defendants' Motion for Summary Judgment on Counts I & II, D.I. 47.) At that time the Court directed the parties to clarify the pleadings and refocus their legal theories. In response, plaintiff filed an amended complaint (D.I. 51), which substituted John R. Youell, on behalf of Lloyd's, London, as the nominal plaintiff and clarified the legal theories upon which recovery is sought in Count I. Defendants' present motion for summary judgment on Counts I and II is based upon the affirmative defenses raised in their answer to plaintiff's amended complaint. (*See* D.I. 52 ¶¶ 24–27.)

## III. ANALYSIS

The defendants have moved for summary judgment on Counts I and II of plaintiff's amended complaint. (*See* D.I. 54.) Count I of the amended complaint claims

---

**3.** Selected Risks had informed Maddox that it would provide him with coverage pursuant to the terms of the Contractor's Public Liability Insurance purchased by Maddox, if Conrail were to recover under either Count I or Count II of the complaint. (D.I. 19 ¶ 2.) Selected Risks had stated that it would deny coverage if Conrail recovers under Count III, which is a claim for contractual indemnity, because the Selected Risks policy excludes from coverage the as- sumption of liability for Conrail's own negligence. (*Id.*) Maddox has filed a state court action seeking a determination of whether the Selected Risks policy includes or excludes coverage for the assumption of Conrail's negligence. At oral argument on this motion, held on June 17, 1988, counsel for Mr. Maddox informed the Court that the declaratory judgment action was still at the discovery stage. (D.I. 61 at 2–3.)

that plaintiff is entitled to common law indemnification from defendants in the full amount of the $500,000 paid to Tuerk on behalf of Conrail. (D.I. 51 ¶ 14.) In the alternative, Count I claims a right to contribution for a portion of that amount. (*Id.*) Each of these claims in Count I is based on the alleged, underlying negligence of defendants in creating unsafe conditions in the railyard which led to Tuerk's injuries. (*Id.*)[4] In Count II, plaintiff claims that defendants breached the contract with Conrail in two respects: (1) by failing to leave Conrail's property in a clean and safe condition while defendants' employees performed the track removal project (*id.* ¶ 16); and (2) by failing to perform their work in a safe, orderly, efficient and workmanlike manner. (*Id.* ¶ 17.) Plaintiff asserts that these and other contractual breaches resulted in Tuerk's injuries and caused plaintiff to incur damages of $500,000. (*Id.* ¶ 18.)

For reasons set out in detail below, the defendants deny liability under each of these theories and move for summary judgment on Counts I and II. This Court may enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The United States Supreme Court has explained that Rule 56(c) mandates entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element that is essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). For the reasons set forth below, the Court will grant defendants' motion as to plaintiff's claims for common law indemnity and breach of contract, but will deny the motion as to the claim for contribution.

### A. *Count I: Common Law Indemnity and Contribution*

#### 1. Choice of Law

Following the doctrine set forth in *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court sitting in diversity must apply the substantive law of the state in which it sits. Included within this body of law are the forum state's choice of law principles; thus, this Court must apply Delaware's conflict of law rules.[5] *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Linder v. Inhalation Therapy Serv., Inc.*, 834 F.2d 306, 309 (3d Cir.1987); *Miller v. Newsweek, Inc.*, 660 F.Supp. 852, 854 (D.Del.1987).

■ It is a generally accepted rule that the right of contribution is governed by the law of the place of the underlying tort. *See generally* Annotation, *What Law Gov-*

---

4. Originally, before plaintiff amended his complaint, there was much confusion as to whether plaintiff's claim in Count I sounded in negligence or contribution. This confusion led defendants to assert various defenses that were tailored to a negligence claim (*e.g.*, a statute of limitations defense and an assertion of contributory negligence). However, both plaintiff's amended complaint (D.I. 51 ¶¶ 11–14) and plaintiff's counsel's representations at oral argument on this motion (*see* D.I. 61 at 15–23) indicate that Count I is a claim for common law indemnity, or, in the alternative, contribution. Thus, the Court does not need to address defendants' arguments on the negligence issue, as set forth in their opening brief on this motion. (D.I. 55 at 12–14.)

5. The Court would also point out that it is well settled that a railroad's right to recover indemnity or contribution from a third party for lia-

bility incurred under the FELA depends entirely upon state law. *See Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1282 (3d Cir.1987); *Armstrong v. Kansas City Southern Ry. Co.*, 752 F.2d 1110, 1114 (5th Cir.1985); *Alabama Great Southern R.R. Co. v. Chicago & N.W. Ry. Co.*, 493 F.2d 979, 983 (8th Cir.1974); *Dorward v. Consolidated Rail Corp.*, 500 F.Supp. 99, 100 (E.D.Pa. 1980); *Pyzynski v. Pennsylvania Cent. Transp. Co.*, 438 F.Supp. 1044, 1052 (W.D.N.Y. 1977); *Brenham v. Southern Pacific Co.*, 328 F.Supp. 119, 123 (W.D.La. 1971), *aff'd*, 469 F.2d 1095 (5th Cir.), *cert. denied*, 409 U.S. 1061, 93 S.Ct. 560, 34 L.Ed.2d 513 (1972); Annotation, *Right of Railroad, Charged with Liability for Injury to or Death of Employee Under Federal Employers' Liability Act, to Claim Indemnity or Contribution from Other Tortfeasor*, 19 A.L.R.3d 928, 931, § 2 (1968) ("Annotation").

*erns Right to Contribution or Indemnity Between Tortfeasors,* 95 A.L.R.2d 1096, 1102, § 4 (1964) ("What Law Governs"). Nevertheless, Delaware classifies contribution as a remedial right—as opposed to a substantive one—and, therefore, applies Delaware law to a claim for contribution. *Perez v. Short Line Inc. of Pa.,* 231 A.2d 642, 645 (Del.Super.1967), *aff'd,* 238 A.2d 341 (Del.Supr.1968). *See also Lutz v. Boas,* 176 A.2d 853, 857 (Del.Ch.1961). Consequently, this Court will apply Delaware law to plaintiff's claim for contribution in Count I.

Plaintiff contends that this reasoning also should apply to the common law indemnity claim. Plaintiff makes this assertion in the belief that "indemnity differs from contribution only in the degree to which one tortfeasor is entitled to recover from another." (D.I. 56 at 7 n. *.) Plaintiff further argues that there is no Delaware authority on point. (*Id.*) To the contrary, however, the Superior Court of Delaware has recently addressed this issue. In *Studebaker–Worthington v. Indian Head, Inc.* (Del.Super. No. 85C–JA–81 Aug. 28, 1987), [available on WESTLAW, 1987 WL 16767] Judge Babiarz had to decide whether to apply Delaware or Illinois law in order to determine whether plaintiffs had a right of indemnity against defendants. The defendants in *Studebaker* maintained that indemnity was a matter of remedy and, therefore, should be governed by the law of the forum, Delaware. This argument was premised on the notion—also espoused by the instant plaintiff—that in Delaware a right to indemnity is recognized as the equivalent of a right to contribution. Judge Babiarz disagreed, and found the indemnity claim to be one of substance, not of remedy. *Id.* at 4–5. The superior court thus applied the substantive law of Illinois, where the underlying injury occurred.[6]

■ In the absence of a definitive statement by the Supreme Court of Delaware, the task of this Court is to predict

---

6. This approach is consistent with the general rule that a tortfeasor's right to indemnity is determined by the law of the place of the tort. *See generally* "What Law Governs," *supra,* 95

how the supreme court would resolve the issues at hand. *McGowan v. University of Scranton,* 759 F.2d 287, 291 (3d Cir.1985). Although not conclusive, lower state court decisions may serve as indicia of how the state's highest court might decide. *Id.* (citing *Pennsylvania Glass Sand v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1167 (3d Cir.1981)). Such decisions may constitute "presumptive evidence" of state law. *Pennsylvania Glass Sand, supra,* 652 F.2d at 1167 (citing *National Surety Corp. v. Midland Bank,* 551 F.2d 21, 30 (3d Cir. 1977)). The Court predicts, therefore, that the Supreme Court of Delaware would find that the right to indemnity would be governed by the law of the place of the underlying tort. The alleged negligence and Tuerk's fall occurred in the Benning Yard, in Washington, D.C. Thus, this Court will apply the law of the District of Columbia to plaintiff's claim for common law indemnification in Count I.

### 2. The Substantive Issues
#### a. *Common Law Indemnity*

Defendants assert that, under District of Columbia law, Conrail's own negligence bars plaintiff's claim for indemnity. Both parties point to *Early Settlers Ins. Co. v. Schweid,* 221 A.2d 920 (D.C.App.1966), as a key case for consideration in the resolution of this issue.

*Early Settlers* involved an action by the insurer of a driver (driver A) who was involved in an automobile accident. The insurer sought indemnification, or in the alternative, contribution from another driver (driver B), after the insurer had paid a settlement to an injured third party (driver C) who had sued the insured (driver A). The District of Columbia Court of General Sessions entered summary judgment for the defendant, and the insurer appealed. The District of Columbia Court of Appeals held that the insurer's complaint was not subject to dismissal and reinstated it.

---

A.L.R.2d at 1105, § 5. *See also Colonial Refrigerated Transp., Inc. v. Worsham,* 705 F.2d 821, 826 (6th Cir.1983) (citing general rule).

In reaching its decision, the court of appeals explained that "[i]t is well settled in [the District of Columbia] that where parties are not wilful and intentional wrongdoers but are made such by legal inference or intendment, contribution may be enforced." *Id.* at 923. The court of appeals further stated:

It is only when a person knows, or must be presumed to know, that his act was unlawful that he will be denied indemnity or contribution. *Where joint tort-feasors are guilty of active negligence and their negligence concurs in causing the injury, none is entitled to indemnity against the others* but there may be contribution among them. *District of Columbia v. Nordstrom*, 117 U.S.App.D. C. 165, 327 F.2d 863 (1963).

*Id.* (emphasis supplied).[7]

Under these guidelines, therefore, the issue can be framed as whether Conrail was guilty of "active" negligence which concurred in causing the injury. This framework is similar to that which is imposed by most courts in an FELA indemnification context. As one commentator has stated:

One obvious reason for permitting [a railroad charged with liability under the FELA to recover indemnification or contribution] is that under the FELA a railroad may be liable merely for a failure to provide its employees with a safe place to work. This so-called "failure" may entail little or almost no actual negligence on the part of the railroad, with the entire proximate cause resulting from the acts of a third party. In such a situation, where the negligence of the third party may be called the "active" or "primary" negligence and that of the railroad "passive" or "secondary" negligence, it has generally been held that the railroad against which liability is sought by its injured employee may recover full indemnity from the third party. *On the*

*other hand, a railroad whose negligence is more than merely passive, and whose acts contribute to the injury, is not entitled to indemnity* although it may nevertheless be entitled to contribution from a third party whose negligent acts also contributed to the injury.

Annotation, *supra*, 19 A.L.R.3d at 931 (emphasis supplied). Thus, where the acts of the railroad and the third party tortfeasor concur to produce the injury for which the railroad seeks indemnity, thus both parties being negligent to some extent, courts generally hold that the railroad is not entitled to indemnity. *Id.* at 936.

■ The Court finds that the undisputed facts do in fact allow the conclusion that Conrail was actively negligent to some degree.[8] Conrail sent Tuerk out in the dark of night to search for a train in an area in which existing rail tracks were being removed. Thus, any alleged negligence by defendants—and concomitant potential for injury—in leaving the yard in disarray was certainly compounded by Conrail's own behavior. Furthermore, under District of Columbia law it makes no difference for purposes of indemnification that defendants' negligence may have been far greater than that of Conrail. The *Early Settlers* court made clear that "if each tort-feasor is at fault in some degree in causing the accident, the fact that the negligence of one may be greater than that of another does not give rise to a right of indemnity...." 221 A.2d at 923.

Consequently, the Court holds that plaintiff is not entitled to recover common law indemnity from defendants. Summary judgment will be entered in favor of defendants on the claim for common law indemnity in Count I.

b. *Contribution*

■ In Delaware, the right to contribution is created by statute. *See* Delaware's Uniform Contribution Among Tort–Feasors

---

**7.** The *Early Settlers* court reinstated the insurer's complaint because it found "nothing in the record ... which disclose[d] any knowledge on [the insurer's] part that the act of its insured was such that it would be precluded from seeking indemnity or contribution...." 221 A.2d at 923.

**8.** The Court emphasizes that it is not deciding the factual question of degrees of negligence, but simply whether *some* negligence existed.

Law, 10 *Del.C.* §§ 6301–6308.[9] In order for an action for contribution to lie, however, the joint tortfeasors must share a "common liability" to the injured party. *Walker v. Patterson*, 325 F.Supp. 1024, 1026 (D.Del.1971); *Hood v. McConemy*, 53 F.R.D. 435, 441 (D.Del.1971); *Fields v. Synthetic Ropes, Inc.*, 215 A.2d 427, 430 (Del.Super.1965); *Lutz v. Boltz*, 100 A.2d 647, 648 (Del.Super.1953). Thus, this Court has held that where one tortfeasor is immune from suit by the victim, the other tortfeasor cannot compel contribution. *Walker, supra*, 325 F.Supp. at 1026.

In *Walker*, the plaintiff, Walker, sought to recover damages from the defendant, Patterson, for personal injuries allegedly sustained in an automobile accident. At the time of the accident, Walker was a passenger in an automobile driven by Cruikshank. Patterson filed a third party complaint against Cruikshank, seeking contribution under the contribution statute. Walker and Cruikshank were fellow employees and were jointly engaged in the course of their employment when the collision occurred. Under Delaware's Workmen's Compensation Act, an injured employee may not bring a direct negligence action against a fellow employee for injuries sustained in the course of their employment. 19 *Del.C.* § 2363(a). Conse-

quently, this Court ruled that, because Walker was barred from bringing an action against Cruikshank, Patterson could not proceed in contribution against Cruikshank, who did not share a common liability with Patterson. 325 F.Supp. at 1026. *See also Rigsby v. Tyre*, 380 A.2d 1371, 1373 (Del. Super.1977) (host driver who, because of Delaware Guest Statute, was not liable to guest passengers for injuries resulting from accident, could not be held liable for contribution on claim by defendant driver).

Similarly, this Court recently has held that an insurer did not share common liability and could not be treated as a joint tortfeasor with other defendants, where the insurer's liability to its insureds arose in contract, while that of other defendants arose in tort. *See Robinson v. Adco Metals, Inc.*, 663 F.Supp. 826, 831 (D.Del.1987) (applying Maryland law).

■ In their present motion, defendants follow this line of reasoning and argue that Conrail and Maddox do not share a common liability to Tuerk, because Conrail's liability arises out of its nondelegable duties under the FELA, while Maddox's liability, if any, arises out of common law negligence. Thus, defendants assert that plaintiff may not seek contribution.[10] With respect to whether common liability exists

---

**9.** Section 6302 provides:
   (a) The right of contribution exists among joint tortfeasors.
   (b) A joint tort-feasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.
   (c) A joint tort-feasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by the settlement.
   (d) When there is such a disproportion of fault among joint tort-feasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tort-feasors shall be considered in determining their pro rata shares.
10 *Del.C.* § 6302.

**10.** Defendants have also argued that they are entitled to summary judgment on the contribution claim because the two-year statute of limitations for personal injury actions had run. *See* 10 *Del.C.* § 8119. This argument apparently

resulted from the initial confusion as to whether Count I of plaintiff's complaint sounded in negligence or indemnity/contribution. In any event, a claim for contribution in Delaware is subject to a three-year statute of limitations, as set forth in 10 *Del.C.* § 8106. *Hall v. Hickman*, No. 82C–MR–18, slip op. at 9 (Del.Super. Sept. 8, 1987) [available on WESTLAW, 1987 WL 17176]; *Goldsberry v. Frank Clendaniel, Inc.*, 109 A.2d 405, 407–08 (Del.Super.1954). Furthermore, the right to contribution remains contingent and inchoate until one of the joint tortfeasors pays more than his proportional share of the underlying claim. *See Royal Car Wash, Co. v. Mayor and Council of Wilmington*, 240 A.2d 144, 146 (Del.Super.1968). Thus, the statute of limitations runs from the time of discharge of the obligation, and *not* from the time when the underlying tort occurred. *Hall, supra*, at 10. Conrail discharged its obligation on November 30, 1983. The complaint was filed less than three years later, on July 2, 1986. Therefore plaintiff's claim for contribution is not time barred.

in such situations, neither the parties nor the Court has found a Delaware case directly on point. However, the wealth of decisions from other jurisdictions suggests that it does, and refutes defendants' contention. As one commentator has noted:

A general prerequisite for the recovery of contribution by the railroad from the third party is that there must be common liability to the injured person between the joint tortfeasors. This apparently does *not* mean that the source of liability —*whether it be statutory or common law*—must be the same, but means, simply stated, that each party, because of its wrongful act, is made legally liable to respond in damages to the injured party.

Annotation, *supra*, 19 A.L.R.3d at 931 (emphasis supplied).

For example, in *Zontelli Bros. v. Northern Pacific Ry. Co.*, 263 F.2d 194 (8th Cir.1959), the Eighth Circuit, applying Minnesota law, held that the liability of a railroad under the FELA for the death of a brakeman in a collision between a caboose and a truck, and the liability of the truck owner for that death under the Minnesota Wrongful Death Act constituted common liability. *Id.* at 198–99. The court of appeals found, therefore, that the railroad, which had settled the action against it under the FELA, was entitled to contribution from the truck owner.

More to the point is *Chicago, Rock Island & Pacific R.R. Co. v. Chicago & North Western Ry. Co.*, 280 F.2d 110 (8th Cir.), *cert. denied*, 364 U.S. 931, 81 S.Ct. 378, 5 L.Ed.2d 364 (1960). In *Rock Island* the employee was injured when the braking apparatus on a railroad car belonging to the defendant railroad, Rock Island, came apart as the employee was attempting to disengage it. Rock Island, which was transferring the car to the plaintiff railroad, North Western, was held negligent for performing the transfer with a defective brake. North Western, the employer,

was found negligent in its failure to inspect the car prior to acceptance; it thereby incurred liability under the FELA and also under the Federal Safety Appliance Act, 45 U.S.C. § 1 *et seq.* After settling a claim by the employee,[11] North Western sought indemnity, or in the alternative, contribution from Rock Island. The district court held that North Western was entitled to contribution, but not indemnity. *See Chicago & North Western Ry. Co. v. Chicago Rock Island & Pacific R.R. Co.*, 179 F.Supp. 33 (N.D.Iowa 1959). On appeal, Rock Island maintained that common liability was absent, because its own liability was based upon common law negligence, while that of the employer, North Western, was predicated upon a statutory duty. Further, Rock Island asserted that any common law duty which it may have owed the employee was superseded by, and ceased upon a statutory violation by the employer. The court of appeals, applying Iowa law, rejected this argument, affirmed the district court's holding, and granted contribution to North Western.[12] In reaching its decision, the court of appeals commented upon the common liability issue:

Rock Island contends that "common liability is absent when one alleged tort-feasor is liable, if at all, only for negligence, and the other's liability is predicated upon a statute which supercedes the common law, and renders the second tort-feasor absolutely liable." The essence of the action for contribution is *common liability* to the injured person, not liability for *common negligence*, or *similar* negligence, or *like* negligence. Simply stated, common liability means that each party, by reason of his wrongful act, is made legally liable to respond in damages to the injured party.

280 F.2d at 115 (emphasis in original).

Similarly, *Southern Ry. Co. v. Foote Mineral Co.*, 384 F.2d 224 (6th Cir.1967), involved an action by a railroad ("South-

---

11. The court of appeals noted that inasmuch as no suit was ever filed by the employee, it was impossible to determine whether violation of the FELA or the Federal Safety Appliance Act, 45 U.S.C. § 1 *et seq.* formed the basis of the settlement. 280 F.2d at 116.

12. The active negligence by North Western was deemed sufficient cause to deny its claim for indemnity from Rock Island. 280 F.2d at 115–17.

ern") against the Foote Mineral Company ("Foote") for indemnity or contribution with respect to the amount paid to decedent's estate in the compromise settlement of an FELA claim. The decedent railroad switchman was killed by a large rock which fell from an overhead conveyor belt while a railroad car was passing underneath the conveyor. The belt was maintained by Foote. Southern paid $50,000 to decedent's estate in compromise of an FELA claim, after it gave Foote advance notice of the settlement. Southern thereafter sued Foote for indemnity, or in the alternative, for contribution under Tennessee common law and also under a contract of indemnity. The district court submitted the case to a jury, which returned a verdict in favor of Southern in the amount of $27,000, and affirmatively held that both Southern and Foote were guilty of active negligence. Both parties appealed.

The Sixth Circuit Court of Appeals held that the verdict of the jury was supported by competent evidence. The court specifically found that a common liability, or "common burden" existed under the facts of the case. The court concluded that "[t]his common burden is not altered by the fact that the liability of Southern is prescribed by the Federal Employers' Liability Act and the liability of Foote is controlled by common law." *Id.* at 228.

The court in *Reynolds v. Southern Ry. Co.*, 320 F.Supp. 1141 (N.D.Ga. 1969), took the same position. The *Reynolds* court stated: "Contribution is allowable in FELA cases, even though the liability of the defendant is statutory and that of the alleged joint tortfeasor may—as here—arise from common law." *Id.* at 1142.

The *Reynolds* court also pointed out that the contrary position, taken by the Fifth Circuit Court of Appeals in *Fort Worth & Denver Ry. v. Threadgill,* 228 F.2d 307 (5th Cir.1955), enjoys very little support. The *Fort Worth* opinion includes a footnote which states that there is no common liabil-

ity between a tortfeasor whose liability is based upon the FELA and one whose liability is based upon common law. 228 F.2d at 312 n. 4. However, the footnote was not an integral part of the opinion, but instead served as a suggestion by the court for an alternative ground for denying contribution. The court had actually held that the railroad was not entitled to contribution because, under Texas law, the third party tortfeasor could assert the complete defense of contributory negligence against the injured party. Thus, common liability was absent. *See also Panichella v. Pennsylvania R.R. Co.,* 167 F.Supp. 345 (W.D.Pa. 1958) (railroad, whose liability was purely statutory, should not enjoy fruits of contribution from common law joint tortfeasor against whom injured party had no right of recovery due to contributory negligence), *rev'd on other grounds,* 268 F.2d 72 (3d Cir.1959), *cert. denied,* 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 353 (1960).

Similarly, a court denied contribution on grounds other than lack of common liability in *Brenham v. Southern Pacific Co.,* 328 F.Supp. 119 (W.D.La. 1971), *aff'd,* 469 F.2d 1095 (5th Cir.), *cert. denied,* 409 U.S. 1061, 93 S.Ct. 560, 34 L.Ed.2d 513 (1972). *Brenham* involved an FELA suit by a railroad brakeman, wherein the railroad sought indemnity, or in the alternative, contribution from owners of a junkyard. The brakeman was injured in the junkyard after he fell on a piece of scrap material six feet from the spur track in the yard. On the question of contribution, the district court, applying Louisiana law, framed the issue as whether the railroad, whose liability toward the injured employee was imposed by the FELA, was bound *in solido* with the other defendants whose liability toward the employee was imposed by Louisiana tort law. After noting the difficulty of the question, the district court sought "another way to resolve the controversy." 328 F.Supp. at 128.[13] Thus, the court found that, even assuming—but *not* deciding—that the rail-

---

**13.** The district court did point out the differences between FELA negligence and negligence under Louisiana tort law: (1) the FELA based the employee's liability on even the slightest negligence, whereas state law did not; (2) con-

tributory negligence was not a complete defense under the FELA, *see* 45 U.S.C. § 53, although it was under Louisiana law; and (3) the prescriptive periods were different. 328 F.Supp. at 127.

road and the third party defendants were bound *in solido,* the railroad could not obtain contribution because its payment under the compromise settlement did not serve to secure any release for the junkyard owners, who had already been released by operation of prescription. *Id.*

In sum, therefore, the aforementioned footnote in the *Fort Worth* case stands virtually alone as squarely in support of defendants' argument. Case authority from other jurisdictions clearly favors the contrary position.[14]

▮▮▮ In light of the foregoing discussion, the Court believes that the Supreme Court of Delaware would favor the majority position. Contrary to defendants' contention, this position is not inconsistent with this Court's holdings in the *Walker v. Patterson* and *Robinson v. Adco* cases, *supra.* The Court would look to two factors to illustrate this point. First, the basis of an employer's liability under the FELA is negligence. *Ellis v. Union Pacific R.R. Co.,* 329 U.S. 649, 653, 67 S.Ct. 598, 600, 91 L.Ed. 572 (1947); *Robert v. Consolidated Rail Corp.,* 832 F.2d 3, 5 (1st Cir. 1987); *Gill v. Pennsylvania R.R. Co.,* 201 F.2d 718, 720–21 (3d Cir.), *cert. denied,* 346 U.S. 816, 74 S.Ct. 27, 98 L.Ed. 343 (1953). Admittedly, recovery is generally allowed under the FELA upon even the slightest indication of a causal link between the employer's negligent act and the resulting injury. *Robert, supra,* 832 F.2d at 6; *Ybarra v. Burlington Northern, Inc.,* 689 F.2d 147, 149 (8th Cir.1982). *See also Tennant v. Peoria & Pekin Union Ry. Co.,* 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1943). The plaintiff thereby carries a much lighter burden than would be the case at common law. Nevertheless, the FELA does not impose strict liability on employers; a plaintiff must still prove the traditional common law elements of negligence: duty, breach, foreseeability and causation. 832 F.2d at

6; *Nivens v. St. Louis Southwestern Ry. Co.,* 425 F.2d 114, 118 (5th Cir.), *cert. denied,* 400 U.S. 879, 91 S.Ct. 121, 27 L.Ed.2d 116 (1970). It is undisputed, therefore, that negligence is the basis of liability against both Maddox *and* Conrail. This is clearly distinguishable from the situation presented by *Robinson v. Adco,* which—in addition to not involving FELA contribution—concerned uncommon liabilities arising out of tort and breach of contract.

Secondly, as the Court has explained above, *Walker* involved the Delaware Workmen's Compensation Act, 19 *Del.C.* §§ *2301 et seq.,* which acted to statutorily bar the injured party from bringing suit against a co-employee for injuries sustained in the course of their employment. *Id.* § 2363(a). Therefore, this Court held that common liability was absent because the potential contributor, the co-employee, was free of liability under the workmen's compensation act's exclusivity provisions. *See Walker,* 325 F.Supp. at 1026. The instant case, however, does not involve a statutory bar to recovery and, therefore, *Walker* is distinguishable on this point. *See supra* note 14.

In short, the Court finds no conflict between its prior holdings on the common liability question and the position taken by a majority of the courts in the context of FELA contribution. The Court holds, therefore, that a railroad charged with liability under the FELA may nevertheless share a common liability with another joint tortfeasor whose potential liability would arise under common law negligence. Therefore, plaintiff is not precluded as a matter of law from asserting its claim for contribution. Defendants' motion for summary judgment as to the contribution claim will be denied.

**B.** *Count II—Breach of Contract*

The Court will now consider the most straightforward issue presented by this

---

**14.** Admittedly, courts addressing this issue have failed to find common liability where an employee sues his employer for workmen's compensation. In such cases, however, the exclusivity provisions of the workmen's compensation law bar the employee from proceeding directly against the employer for damages. Thus, the railroad and the employer do not share a common liability in such a situation, and contribution may not be recovered. *See, e.g., Slechta v. Great Northern Ry. Co.,* 189 F.Supp. 699 (N.D. Iowa 1961). *Cf. Walker v. Patterson,* 325 F.Supp. 1024 (D.Del.1971).

motion, namely, defendants' argument that plaintiff's claim for breach of contract is barred by the applicable statute of limitations. At the outset, however, the Court will address plaintiff's counter-argument that defendants have expressly and specifically waived their statute of limitations defense. The Court disagrees with plaintiff's assertion for the reasons set forth below.

Plaintiff's contention is based upon a letter which defense counsel submitted to the Court on October 6, 1987. (*See* D.I. 56A, Exhibit E.) The letter included a statement indicating that the statute of limitations defense—which defendants had affirmatively asserted in their answer (*see* D.I. 6 ¶ 26)—had been abandoned. (*See* D.I. 56A, Exhibit E at 2.) Defense counsel had submitted the letter in response to the Court's request for clarification of various issues in the case. This request was made in the Court's September 10, 1987 Order Granting Defendants' Motion for Reargument (D.I. 43) as to defendants' motion for summary judgment on Counts I and II. (*See* D.I. 41.) On October 9, 1987, three days after defendants submitted the letter, the Court in fact heard oral argument on defendants' motion. In its October 20, 1987 order denying the motion (D.I. 47), the Court indicated that, even after hearing the parties, it was still unclear on the positions being taken on a series of legal issues in the case. The Court concluded the order by noting that the "pleadings, the theories of recovery, [and] the defenses are just too indefinite for the Court to make a sensible summary judgment ruling." (*Id.* at 4.) Thus, the Court itself was uncertain as to what de-

fenses were being asserted, and requested further clarification.

At a status conference held by the Court on February 9, 1988, defendants informed the Court that they indeed were relying on the statute of limitations defense. Ten days after that status conference, on February 19, 1988, plaintiff filed an amended complaint. (D.I. 51.) In their answer to plaintiff's amended complaint (D.I. 52), filed on February 29, 1988, defendants once again asserted their statute of limitations defense. (*See id.* ¶ 25.)

Based on the foregoing sequence of events, the Court finds that plaintiff suffered no prejudice from defendants' temporary abandonment of the statute of limitations defense. The present case does not present a situation where the defendant has waived such a defense by failing to assert it. *See Leavy v. Saunders*, 319 A.2d 44, 47 (Del.Super.1974). To the contrary, defendants affirmatively asserted the defense in timely fashion, both in their original answer (D.I. 6 ¶ 26) and in their answer to plaintiff's amended complaint. (D.I. 52 ¶ 25.) In addition, the brief period of abandonment had no prejudicial effect on plaintiff, either with respect to the discovery process, or in any other way. Consequently, the Court finds that the defendants may assert their affirmative defense of statute of limitations.[15]

The Court must now determine the limitations period to be applied. In following the *Erie* doctrine, this Court must apply Delaware's law regarding statutes of limitations. *See Wells v. Simonds Abrasive Co.*, 345 U.S. 514, 516–17, 73 S.Ct. 856,

---

15. In reaching this conclusion, the Court is not unmindful of Judge Schwartz's opinion in *Bamdad Mechanic Co. v. United Technologies Corp.*, 586 F.Supp. 551 (D.Del.1984) (*Bamdad I*), *vacated and remanded on other grounds*, 760 F.2d 255 (3d Cir.1985), *on remand*, 109 F.R.D. 128 (D.Del.1985) (*Bamdad II*). In *Bamdad I*, Judge Schwartz held that a party could, by agreement, waive a statute of limitations defense after the statute had run. *Bamdad I*, 586 F.Supp. at 553–54. In contrast to the instant case, however, *Bamdad I* involved a defendant's pre-suit waiver upon which the plaintiff had relied. The case at bar is clearly distinguishable on the facts. The instant defendants had affirmatively asserted the statute of limitations defense in their origi-

nal answer. (*See* D.I. 6 ¶ 26.) Moreover, there is no indication that plaintiff has relied to his detriment on defendants' temporary abandonment of that defense. Furthermore, the specific language of Judge Schwartz's holding was rather limiting; he stated that "the Court believe[d] that the Delaware Supreme Court would bar a defendant from pleading a statute of limitations defense if he promised, in return for consideration, not to raise the statute even though the statute had already run." 586 F.Supp. at 554. Obviously, the situation contemplated by Judge Schwartz in no way resembles the facts at hand. Thus, the Court finds *Bamdad I* inapposite to this case.

857–58, 97 L.Ed. 1211 (1953); *Ontario Hydro v. Zallea Systems, Inc.*, 569 F.Supp. 1261, 1265 (D.Del.1983); *Freedman v. Beneficial Corp.*, 406 F.Supp. 917, 921 (D.Del. 1975). However, Delaware has adopted a "borrowing statute" in an effort to prevent nonresident plaintiffs from "forum-shopping" for a statute of limitations that is longer than the one imposed by the state in which the action arose. *See* 10 *Del. C.* § 8121.[16] The "borrowing statute" provides that when a cause of action arises outside of Delaware, a federal court sitting in diversity in Delaware must apply whichever is *shorter:* the statute of limitations of Delaware, or that of the jurisdiction in which the claim arose. *Id.*

■ In the instant case, both parties agree that Delaware's statute of limitations should apply to plaintiff's causes of action. Thus, even though the parties disagree as to whether the law of Pennsylvania (where the contract was signed) or the District of Columbia (where the incident occurred) governs the substantive contract issues, neither party has offered the respective statutes of limitations of those states for comparison.[17] Nevertheless, the Court finds that Delaware's three-year limitations period, as set forth in 10 *Del. C.*

16. Section 8121 provides:

Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action. Where the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of this State, the time limited by the law of this State shall apply.

10 *Del.C.* § 8121.

17. Defendants have gone one step beyond this omission by failing to even mention Delaware's borrowing statute, 10 *Del.C.* § 8121, in their briefs.

18. Section 8106 provides:

No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based

§ 8106,[18] does indeed apply to plaintiff's breach of contract claim. This would be the case whether the action arose in Pennsylvania or the District of Columbia, because Delaware's limitations period is shorter than that of Pennsylvania, and equal to that of the District of Columbia.[19]

■ Delaware follows the generally accepted principle that a cause of action for breach of contract accrues at the time of the breach. *Hood v. McConemy*, 53 F.R.D. 435, 445 (D.Del.1971); *Lembert v. Gilmore*, 312 A.2d 335, 337 n. 3 (Del.Super.1973); *Nardo v. Guido DeAscanis & Sons*, 254 A.2d 254, 256 (Del.Super.1969). In this case the breach occurred, if at all, no later than July 3, 1982, the date on which Tuerk sustained the injuries allegedly attributable to the breach. Plaintiff did not bring suit until July 2, 1986, nearly four years to the day after Tuerk's fall. However, as previously stated, Delaware imposes a three-year statute of limitations for breach of contract claims. 10 *Del.C.* § 8106. Based on the undisputed facts, therefore, plaintiff's action for breach of contract is time barred. Consequently, the Court will enter summary judgment for defendants as to Count II of plaintiff's complaint.

on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108–8110, 8119 and 8127 of this title.

10 *Del.C.* § 8106.

19. In Pennsylvania, actions on written contracts are subject to a six-year limitations period. 42 Pa.C.S.A. § 5527 (1981 & Supp.1988). *See Boyle v. State Farm Mut. Auto. Ins. Co.*, 310 Pa.Super. 10, 456 A.2d 156, 160 (1983). As with Delaware, the District of Columbia imposes a three-year statute of limitations for actions on contracts not under seal. *D.C.Code Ann.* § 2–301(7) (1981). *See Woodruff v. McConkey*, 524 A.2d 722, 725 (D.C.App.1987). Thus, whether the claim arose in Pennsylvania or the District of Columbia, Delaware's borrowing-statute would mandate application of a three-year limitations period. *See* 10 *Del.C.* § 8121.

### C. *Count III—Contractual Indemnity*

Plaintiff has filed a Renewed Motion for Summary Adjudication as to Count III of the amended complaint. (D.I. 57.) In so doing, plaintiff requests that the Court reconsider its order denying both parties' cross-motions for partial summary judgment as to Count III. (D.I. 40.) Plaintiff contends that summary "adjudication" is an appropriate way to resolve Count III before trial, while still preserving the parties' right to trial on Counts I and II. *See* 6 Part 2 *Moore's Federal Practice* ¶ 56.20[1]–[3–4]. Nevertheless, the Court will deny plaintiff's renewed motion, essentially for the reasons set forth in this Court's memorandum opinion of August 18, 1987, reported at *Consolidated Rail Corporation v. Maddox,* 116 F.R.D. 672 (D.Del. 1987).

### IV. CONCLUSION

Defendants have moved for summary judgment as to Counts I and II of plaintiff's complaint. With respect to Count I, the Court has found that plaintiff may not assert a claim for common law indemnity, because it was at least somewhat actively negligent with respect to Tuerk's accident. Thus, defendants' motion for summary judgment will be granted as to the claim for common law indemnity. Nevertheless, the Court has determined that plaintiff may assert a claim for contribution. The fact that plaintiff's liability to Tuerk is based upon its statutory duty under the FELA, while any duty defendants might owe would be based upon common law negligence does not of itself negate the requisite common liability. Therefore, defendants' summary judgment motion will be denied as to the claim for contribution. In addition, the Court has found that plaintiff's claim for breach of contract is barred by the applicable three-year statute of limitations. Consequently, defendants' motion for summary judgment will be granted as to Count II of the complaint.

Finally, plaintiff's Renewed Motion for Summary Adjudication as to Count III of the amended complaint (D.I. 57) will be denied, essentially for the reasons set forth in this Court's memorandum opinion of August 18, 1987, reported at 116 F.R.D. 672 (D.Del. 1987).

An order will be entered in conformity with this Memorandum Opinion.